The Elmira Savings Bank, Respondent, *v.* Charles Davis, as Receiver, etc., Appellant.

The provisions of the National Banking Law (§ 5242), prohibiting transfers or payments by a National bank after the commission of an act of insolvency, or in contemplation thereof, made "with a view to the preference of one creditor to another," was not intended to and does not require that in the distribution of the assets of an insolvent National bank, rights lawfully acquired by a creditor, or superior . equities, should be disregarded and annulled, and so, liens, equities or rights arising by express agreement between the bank and one contracting with it, or implied from the nature of the dealings between the parties, or by operation of law prior to insolvency, and not in contemplation thereof, are not invalidated.

It is the voluntary act of the bank in view of insolvency, and with the view of preventing the ratable application of its property which is declared to be null and void.

· Accordingly *held*, that the provisions of the State Banking Law (§§ 118, 130, chap. 689, Laws of 1892), permitting savings banks to keep a fund on deposit in State or National banks, and providing that in case the bank receiving the deposit becomes insolvent, the savings bank shall have a preference, is not in conflict with the National law; and that a savings bank having deposits with a National bank when the latter became insolvent, was entitled to a preference in payment out of the assets of the insolvent bank in the hands of a receiver, after its circulating notes had been provided for and all the conditions of the National law complied with.

Reported below, 73 Hun, 357.

(Argued May 3, 1894; decided June 5, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made December 27, 1893, which directed judgment in favor of plaintiff upon a case submitted under the Code of Civil Procedure (§ 1279).

Plaintiff, a savings bank incorporated under the laws of this state, had, on May 24, 1893, a deposit account with the Elmira National Bank. On that day said bank having become insolvent, defendant was appointed its receiver by the comptroller of the currency    Plaintiff claimed that the amount of its deposit

should be paid as a preferred claim under the State Banking Law. (Laws of 1892, chap. 689, § 130.)

The provisions of the statutes and further facts, so far as material, are stated in the opinion.

*Charles H. Peck* for appellant. Congress is empowered to prevent preferences to creditors of insolvent National banks, and, having so legislated, the Federal law is supreme. (*N. Bank* v. *Colby*, 21 Wall. 613; *Bank of Bethel* v. *P. Bank*, 14 id. 402; *C. C. N. Bank* v. *United States*, 107 U. S. 445; *Balch* v. *Wilson*, 25 Minn. 299; *Schmidt* v. *N. Bank of Selma*, 22 La. Ann. 314; *Turner* v. *N. Bank of Keokuk*, 20 Iowa, 568; *V. N. Bank* v. *Taylor*, 56 Penn. St. 14; *Raynor* v. *P. N. Bank*, 93 N. Y. 374; *Hayes* v. *Beardsley*, 136 id. 304; *Bank* v. *Butler*, 129 U. S. 223; *Robinson* v. *N. Bank*, 81 N. Y. 393; *M. N. Bank* v. *P. N. Bank*, 30 Hun, 53; 93 N. Y. 648; *Wilson* v. *B. C. M. Co.*, 12 Pet. 250; *New York* v. *Coombs*, Id. 72; *United States* v. *Milne*, 11 id. 155; *C. N. Bank* v. *R. N. Bank of Mansfield*, 52 How. Pr. 138; *Bank of Redemption* v. *Boston*, 125 U. S. 67; *Rosenblatt* v. *Johnston*, 104 id. 462; *W. N. Bank* v. *Parker*, 41 Fed. Rep. 402; *Wasson* v. *N. Bank*, 5 West [Ind.], 270; *N. Bank* v. *Richmond*, 42 Fed. Rep. 877; *F. N. Bank* v. *Herbert*, 44 id. 158; *F. N. Bank* v. *Landes*, 45 id. 619; *People* v. *Smith*, 50 Hun, 307.) The state law does not and cannot give to a savings bank an equitable lien on its deposit in a National bank. (*Payne* v. *Wilson*, 74 N. Y. 353; *P. N. Bank* v. *Mixter*, 124 U. S. 721; *C. C. N. Bank* v. *U. S.*, 107 id. 445; *N. Bank* v. *Commonwealth*, 9 Wall. 353; *Waite* v. *Dowley*, 94 U. S. 527; *W. U. Tel. Co.* v. *Mass.*, 125 id. 551; *Hughitt* v. *Hayes*, 136 N. Y. 167; *Richards* v. *La Turette*, 119 id. 59; *Commercial Bank* v. *Hughes*, 17 Wend. 94; *Marsh* v. *O. C. Bank*, 34 Barb. 298; *A. N. Bank* v. *F. N. Bank*, 46 N. Y. 82; *F. N. Bank* v. *O. N. Bank*, 60 id. 288; *C. Bank* v. *People*, 93 id. 582.)

*Edward Winslow Paige* for appellant. Every claim against the association lately known as the Elmira National Bank, which

has been proved to the satisfaction of the comptroller of the currency of the United States, or adjudicated in a court of competent jurisdiction, is entitled to its ratable share of the things which the defendant has got or can get, and which are money or will produce money. (Laws of 1892, chap. 689, § 130.)

*Edward G. Herendeen* for respondent. National banks are intended to be placed on the same footing as state banks by section 130 of the Banking Law of this state giving to savings banks making authorized deposits in a bank thereafter becoming insolvent, a preference over other depositors in the distribution of the assets of the insolvent bank. (Laws of 1892, chap. 689, §§ 118, 119, 130; 73 Hun, 360.) The National Banking Law is not inconsistent with the provisions of our State Banking Law, giving a preference to savings banks over other depositors in the distribution of the assets of an insolvent National bank. (U. S. R. S. §§ 5236, 5242; *Scott* v. *Armstrong,* 146 U. S. 499; *Yardley* v. *Clothier,* 51 Fed. Rep. 506; 49 id. 337; *S. S. Co.* v. *Armstrong,* 37 id. 18; *Armstrong* v. *Warner,* 31 N. E. Rep. 877; *Hughitt* v. *Hayes,* 136 N. Y. 136; *C. E. Bank* v. *Blye,* 101 N. Y. 303; *F. N. Bank* v. *Dunbar,* 118 Ill. 625; *Hade* v. *McVey,* 31 Ohio St. 231, 238; *C. N. Bank* v. *Armstrong,* 59 Fed. Rep. 372; *Gilbert* v. *Mortimer,* 10 B. & C. 44; *Clark* v. *Islin,* 21 Wall. 360; *N. Bank* v. *Graham,* 100 U. S. 699.) Section 130 of the Banking Law of this state, making deposits by a savings bank a preferred claim against an insolvent National bank, is within the proper sphere of state legislation; is not inconsistent with the proper construction of the National Banking Act; and to construe the two acts as inconsistent and repugnant would force the National legislation beyond constitutional limitations. (*N. Bank* v. *Commonwealth,* 9 Wall. 359; *W. U. Tel. Co.* v. *Mass.,* 125 U. S. 551; *Waite* v. *Dowley,* 94 id. 527; *Thomas* v. *F. Bank,* 46 Md. 43; *F. & M. N. Bank* v. *Dearing,* 91 U. S. 29; *Winter* v. *Baldwin,* 89 Ala. 483.) It is conceded by both parties to this controversy, and it is now the settled practice, that such actions

as this may be brought in state courts, and that the receiver alone may be a party. (*Adams* v. *Darmis*, 29 La. Ann. 315; *Case* v. *Terrell*, 11 Wall. 199; *Kennedy* v. *Gibson*, 8 id. 498; *Case* v. *Bank*, 100 U. S. 446.)

Gray, J.  The defendant is the receiver of an insolvent National bank and the plaintiff, a savings bank created under the laws of this state, claims, with respect to its deposits theretofore made with the former, to be entitled to be preferred in payment, under section 130 of the Banking Law of this state. (Laws of 1892, chap. 689.)  The circulating notes have been provided for and all other conditions of the Banking Law have been complied with, so as to entitle the claim to be allowed, if not in conflict with the provisions of the National Banking Law.  The State Banking Law permits the trustees of savings banks to keep an " available fund  *  *  *,  on hand or deposit in any bank in this state, organized under any law in this state or of the United States," etc., etc  (§ 118.)  Section 130 provides as follows :

" All the property of any bank or trust company which shall become insolvent shall, after providing for the payment of its circulating notes, if it has any, be applied by the trustees, assignees or receiver thereof in the first place to the payment in full of any sum or sums of money deposited therewith by any savings bank, but not to an amount exceeding that authorized to be so deposited by the provisions of this chapter, and subject to any other preference provided for in the charter of any such trust company."

The sole contention is whether this provision can be given effect in the distribution of the property of insolvent National banks.  The appellant insists that it conflicts with certain provisions of the National Banking Law ; which were framed to prohibit preferences, and relies upon the following sections of the Revised Statutes of the United States.

" § 5236. From time to time, after full provision has been made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall

make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held."

" § 5242.    All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any National banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void, and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding, in any state, county, or municipal court."

The provisions of the Federal law as to National banks constitute a complete system for their establishment, government and winding up. (*Cook Co. Nat. Bank* v. *United States,* 107 U. S. 445.) As agencies of the government, in the administration of a branch of the public service, the states are without authority to exercise any control over them, or to affect their operation, (except so far as Congress may permit); where the legislation will conflict with the National law, or will tend to impair or destroy their utility and efficiency in performing the functions, by which they are designed to serve the government. (*National Bank* v. *Commonwealth,* 9 Wall. 353; *Farmers' National Bank* v. *Dearing,* 91 U. S..

33; *Waite* v. *Dowley*, 94 id. 527; *Western Union Tel. Co.* v. *Mass.*, 125 id. at p. 551.) If the State Banking Law, in these provisions which we are considering, comes into conflict with the operation of the Federal law, the former must be held ineffectual to impede the due execution of the latter, in all respects therein intended and provided for. Is that the case here? We are not now concerned with questions of the propriety or justice of the state law, in directing the claims of savings banks to be preferred in payment over those of other depositors. That is the law of the state, enacted by its legislature in furtherance of the protection and security designed to be afforded to the savings of the people and if the inhibition of section 5242 of the U. S. Revised Statutes does not extend so far as to prevent its operation in such a case, it must be given its full effect. That effect would be to preserve and enforce a right or preference, which had accrued to the savings bank in making deposits of its funds with the National bank, and which will be deemed to have been in the contemplation of the parties and assented to. Their contractual relations were necessarily influenced and shaped by the provisions of this public law; which gave to that class of depositors a superior claim or lien to that of other depositors or creditors upon the property of the bank. Are these provisions for security against a possible loss of the deposits of savings banks inconsistent with that equal distribution among creditors, which was intended by the National law to be effectuated, when the moment of insolvency arrived? The language of section 5242 does not seem to convey that idea, in providing that "all payments of money to either," (*i. e.* shareholders or creditors) "made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void." In *Corn Exchange Bank* v. *Blye* (101 N. Y. 303), it was said by this court of this section that "it specifically prohibits all trans-

fers of the corporate property made with a view to prefer-
ences and so protects the creditors from any voluntary act of
the bank, which selects out favored individuals for payment."
It is a transfer of property, or a payment of moneys, in con-
templation of insolvency, in order to give a preference to the
creditor, which the law condemns. Its policy is to secure
equality of distribution of the assets among creditors; but it was
not intended that, in the distribution, rights lawfully acquired
and superior equities should be disregarded and annulled.

But we have upon this question a very recent and emphatic
declaration by the United States Supreme Court, in the case of
*Scott* v. *Armstrong* (146 U. S. 499). In that case, the ques-
tion related to the right of one who was debtor to a National
bank to an equitable offset, as against its receiver; appointed by
the comptroller of the currency to close up its affairs for
insolvency. Sections 5236 and 5242 were relied upon as for-
bidding it; because of their requirements that there should be
a ratable disposition among the creditors and that there should
be no preference given or suffered, in contemplation of, or
after committing the act of insolvency. Chief Justice Fuller,
delivering the opinion of the court, said : "We do not regard
this position as tenable. Undoubtedly any disposition by a
National bank, being insolvent or in contemplation of insol-
vency, of its choses in action, securities or other assets, made
to prevent their application to the payment of its circulating
notes, or to prefer one creditor to another, is forbidden; but
liens, equities or rights arising by express agreement, or
implied from the nature of the dealings between the parties,
or by operation of law, prior to insolvency and not in contem-
plation thereof, are not invalidated. The provisions of the
act are not directed against all liens, securities, pledges or
equities, whereby one creditor may obtain a greater payment
than another, but against those given or arising after or in con-
templation of insolvency. Where a set-off is otherwise valid,
it is not perceived how its allowance can be considered a pref-
erence, and it is clear that it is only the balance, if any, after
the set-off is deducted which can justly be held to form part

of the assets of the insolvent. The requirement as to ratable dividends, is to make them from what belongs to the bank, and that, which at the time of the insolvency belongs of right to the debtor, does not belong to the bank."

This is very explicit language and must be regarded as controlling upon us, as a construction placed by the highest Federal Court upon these provisions of the National Banking Law. In that case and in those of *Waite* v. *Dowley* and *National Bank* v. *Commonwealth* we have authoritative expressions of opinion from which to imply the doctrine, that state legislation in regulation of the general conduct of the business of the National bank with its depositors is not an interference with any exercise of the governmental power. If in the course of its business, through force of state laws, rights are accorded to, or liens are acquired by, depositors or creditors, they are not within the purview of sections 5236 or 5242. The distinction between what is legislation by the state which conflicts with the National Banking Law and what is a constitutional exercise of state legislative power in relation to National banks is found by considering whether it assails or affects the independence of the National bank, in the performance of its functions as an agency of the general government. With respect to its contracts, its rights and remedies, they may, in general, be subject to, or based upon, state legislation, without impairing their efficiency as National institutions. ( *Western Union Co.* v. *Massachusetts, supra.*) It is the voluntary act of the National bank, in contemplation of its insolvency and with the view of then preventing the ratable application of its property, which is avoided by the National law. In the present case, while a going concern, it entered into an engagement with the savings bank, which the state law required and regulated; which vested in the latter superior rights or equities, and which, in the possible event of future insolvency, would give to it a prior claim to payment from the assets. When that event happened and the receiver was appointed, he took over the property of the insolvent concern, as trustee for its creditors and shareholders, under the same conditions as the

bank held it and subject to the right of this plaintiff to be first paid in full, before other creditors were paid.

I think the judgment of the General Term below was right and that it should be affirmed; with costs.

All concur, except EARL and PECKHAM, JJ., not voting.

Judgment affirmed.