ARMITAGE MATHEWS, as Trustee in Bankruptcy of the CLINTON H. SMITH COMPANY, a Corporation, Respondent, *v.* ENGELBERT HARDT and Others, Appellants, Impleaded with Others.

*An agreement made by the president of a corporation that a party advancing money shall have a lien upon its assets. binds the corporation — it is valid except against judgment creditors, purchasers or lienors — it is void under the United States Bankruptcy Act where possession of the assets is taken thereunder within four months of the filing of the petition in bankruptcy.*

In an action brought by a trustee in bankruptcy of a corporation to set aside as fraudulent a transfer made by it to the defendant firm, it appeared that the corporation was organized in September, 1899, and that it had no working capital whatever; that, for the purpose of obtaining a supply of working capital, the president of the corporation made an oral agreement with the firm, by which the firm agreed to advance to the corporation working capital to the extent of $35,000 or $40,000 and, in addition thereto, to discount the sales made by the corporation. This agreement provided "that when the corporation sold goods, the bills therefor should be payable to the copartnership which discounted the bills for the corporation, and that for the advances made, the copartnership should at all times have a lien upon all of the assets of every kind either then owned, or which might thereafter be acquired."

The firm performed its part of the agreement until October, 1900, when, having advanced during that period between $40,000 and $50,000, it refused to make further advances. The president of the corporation thereupon abandoned the business and a few days later the firm took possession of all the assets of the corporation and sold the same, realizing thereon about $7,000.

In December, 1900, the corporation was adjudged bankrupt and the plaintiff was appointed trustee.

*Held,* that the agreement, although not evidenced by a formal resolution of the board of directors or by vote of the stockholders, was binding upon the corporation;

That such agreement was, however, voidable under section 60 of the National Bankruptcy Act as being a preferential transfer made within four months of the filing of the petition in bankruptcy;

That the question whether the transfer was made within four months of the filing of the petition was controlled by the time when possession of the assets of the corporation was taken under the oral agreement and not by the time when such oral agreement was made.

*Semble*, that, aside from the provisions of the Bankruptcy Law, the agreement was enforcible except as against judgment creditors, purchasers or lienors who had intervened before the firm took possession of the assets of the corporation under it.

VAN BRUNT, P. J., dissented.

APPEAL by the defendants, Engelbert Hardt and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of May, 1902, upon the decision of the court, rendered after a trial at the New York Special Term, setting aside a certain transfer as fraudulent and appointing a referee to determine the value of the property transferred.

In pursuance of a petition filed on December 26, 1900, by certain creditors of the Clinton H. Smith Company, that corporation was duly adjudicated bankrupt and the plaintiff was appointed trustee and brought this action to set aside, as fraudulent and void as to creditors and as having been made with intent to give a preference, the transfer of property of the bankrupt company to the defendants Hardt, Von Bernuth and Krause, who, in October, 1900, had taken possession of such property by virtue of an agreement previously made with the corporation.

Clinton H. Smith had, prior to September, 1899, been in business individually and had failed and made an assignment for the benefit of creditors among whom were the defendants named and who constituted the firm of Hardt, Von Bernuth & Co. A compromise was effected with the creditors by the formation of a corporation in September, 1899, designated "The Clinton H. Smith Company" with a capital stock of $100,000, half of which was in common and half in preferred stock. The common stock was issued for the good will and trade marks of the business which had been carried on by Mr. Smith, and of the preferred stock $23,400 was issued for the machinery and merchandise which went into the corporation and such stock became his property. To the creditors was given twenty-five per cent of their claims in cash or fifty per cent in stock of the new company, and in this manner there passed to the

firm of Hardt, Von Bernuth & Co. seventy-five shares of preferred stock and Mr. Krause was made one of the directors of the corporation. The new company had thus no working capital whatever, and Mr. Smith, who was made its president and was also made a director, applied to Hardt, Von Bernuth & Co. at the time of the organization and requested the advance of cash to the extent of $35,000 or $40,000 to enable the corporation to carry on its business. He proposed that the firm should cash the bills representing the sales made, and, in addition, advance, as required, moneys to the amounts stated. This latter was to be an open credit over and above what was advanced on the discount of the sales of the corporation.

It was thereupon orally agreed between them " that when the corporation sold goods, the bills therefor should be payable to the copartnership which discounted the bills for the corporation, and that for the advances made, the copartnership should at all times have a lien upon all of the assets of every kind either then owned, or which might thereafter be acquired." This agreement as stated was made about the time of the organization of the corporation; and thereafter the firm of Hardt, Von Bernuth & Co. continued to make the advances requested and to discount the sales made by the corporation down to about the 1st of October, 1900, when Mr. Smith made an application for additional capital, and the defendants, having up to that time advanced between $40,000 and $50,000, refused to advance more. Thereupon Mr. Smith resigned as president and as a director of the corporation and abandoned the business. A few days later the defendants, Hardt, Von Bernuth and Krause, took possession of the machinery, goods, merchandise, accounts and practically all the assets of the corporation, which thereafter they sold, not realizing, however, anything like a sufficient amount to pay the indebtedness to them.

It appears that at the date when the defendants took possession, in October, 1900, the corporation was insolvent, and it was subsequently, in December, 1900, that other creditors filed the petition of involuntary bankruptcy resulting in the plaintiff's appointment as trustee and the bringing of this action by him for a return of the property received by the defendants or its value.

The sum realized upon the sale was about $7,000, which left the defendants creditors in the sum of about $50,000, or, as stated in

the bankrupt's schedules, $52,000. The entire liabilities of the corporation were about $62,897.27, so that there was owing to the defendants about five-sixths of the entire indebtedness.

Upon the trial at Special Term the court, in making an award in favor of the plaintiff, distinctly placed its decision upon the ground that the oral agreement which it found had been made, whereby the defendants were to have a lien upon all the property of the corporation then owned or thereafter to be acquired, and the consummation of it in October, 1900, " having been made with intent to hinder, delay and defraud creditors, was and is conclusively fraudulent and void as against the plaintiff as trustee in bankruptcy."

From the judgment entered upon such decision the defendant appeals.

*Alexander Blumenstiel,* for the appellants.

*Abraham Gruber,* for the respondent.

O'Brien, J. :

It is important at the outset to determine what rights the defendant acquired under the oral agreement which the court, upon sufficient evidence, found was made between the Smith corporation and the firm of Hardt, Von Bernuth & Co. Some point is made that the agreement was not that of the corporation, because it was not evidenced by a formal resolution of the board of directors, or by vote of the stockholders. It was, however, made by the president of the company ; under it the moneys were obtained by which the latter was enabled to do business, and, therefore, being a contract within the scope of the authority vested in the executive head and for the purpose of the business, we think it was binding upon the corporation.

The purpose of the agreement was to furnish the corporation with the capital needed to carry on its business, and, for the protection of the firm making the advances, it was proposed in every way in which protection could be accorded to give security therefor. In addition to making the bills for goods sold payable to the firm which discounted them, it was agreed that the latter should have a general lien upon all the property acquired by the corporation. It is insisted that this arrangement operated to create an oral or verbal

chattel mortgage in favor of the firm; but it seems to us useless to label it by any particular name, because the tendency of so doing would be to introduce confusion and obscure a subject which, with conflicting decisions, is made sufficiently difficult. The attempt to give it such a legal designation, and then further to confine ourselves to the principles which govern such mortgages, would be as apt, although those principles to some extent are analogous, to mislead as to aid in a solution of the questions presented. Were it necessary to legally designate the transaction, we should hesitate to call it an oral chattel mortgage, because there are lacking many of the qualities inherent in such a mortgage, as, for instance, the passing of title, or the right to possession, or a covenant or condition which would enable the contract to be enforced at any specified time. We think the parties themselves properly designated it as an agreement to give a lien on the property of the corporation which conferred upon the defendant firm the right to enforce such lien when and after they had made the advances to the extent stipulated and upon the refusal of the corporation to repay such advances. We are, of course, considering the agreement as between the parties and not as bearing upon what would be their rights as against others who were creditors or purchasers for value.

In the view of the learned judge at Special Term, the feature of the agreement by which it was attempted to give to the partnership a lien on the after-acquired property of the corporation is regarded as vitiating and rendering fraudulent the entire agreement. That neither the agreement itself nor the acts of the parties under it were fraudulent in fact is, however, made to appear, because the sums were advanced in good faith by the firm to the corporation to enable the latter to carry on the business and this has resulted in a serious loss to the firm, the amount of which is not in dispute. The insistence, as we understand it, is, that by reason of the feature alluded to, the arrangement, whether it be regarded as in the nature of a verbal chattel mortgage or as an oral agreement to give a lien, was fraudulent and void in law in undertaking to affect after-acquired property. In support of this proposition the respondent cites many cases, among which are *Edgell* v. *Hart* (9 N. Y. 213) and *Southard* v. *Benner* (72 id. 424). On examination, however, it will be found that these are cases where a creditor's lien by judg-

ment or execution had attached before the mortgagee took possession. In the opinions in some of these cases, particularly in the one principally relied upon of *Edgell* v. *Hart* (*supra*) expressions may be found which would indicate the view of the judge writing the opinion to be that an agreement whether by way of mortgage, written or verbal, which attempted to embrace after-acquired property was, in all respects, illegal and void, and that no rights could thereby be acquired by the one in whose favor the agreement was made. It is important in construing the language of an opinion to keep in mind the precise question involved. As already intimated, the questions therein directly presented related either to creditors who, under an execution, or purchasers who, in good faith, had secured rights in or a lien upon the property before possession had been taken thereof by the one claiming under an agreement which included, at the time when made, property not then in existence. Of course, as to such persons, the authorities are uniform that the agreement is voidable. Without attempting to cite or analyze all the cases bearing upon this subject or attempting to reconcile expressions to be found in opinions, we believe we are justified in stating that, under all the recent decisions in this State, the law is now settled that such an agreement is neither illegal in itself nor unenforcible as between the parties to it ; and, except as against judgment creditors or purchasers in good faith or those who acquire a lien of some kind prior to possession being taken of the property, it is valid and enforcible. Here the distinguishing fact is that all of this property has been taken possession of and sold by the firm before the bankruptcy and before any adverse lien or title had been asserted or acquired, and, therefore, the plaintiff, as trustee, unless upon the theory that the agreement constituted an unlawful preference, which we shall hereafter discuss, obtained no right to assail it as invalid as to him.

The question which we have to consider in determining the rights acquired under this agreement is not one wherein there are presented intervening rights of creditors or purchasers in good faith before possession was taken of the property under claim of a lien, but we are called upon to decide whether the agreement in and of itself is fraudulent and void, so that under it no interests could be acquired by the persons in whose favor it was made. Such question

has most frequently been presented in cases involving rights acquired under chattel mortgages (verbal or written), and as the principles applicable are in many ways analogous, resort with profit may be had to what has been said in such cases.

Without going through all the authorities and attempting to reconcile them, we have the case of *Deeley* v. *Dwight* (132 N. Y. 59), in which it is stated that a legal title to property not in existence actually or potentially, cannot be transferred by way of mortgage, but that such an instrument may be construed by a court of equity as operating by way of present contract to give a lien, which, as between the parties, takes effect where there are no intervening rights of third persons when the property comes into existence and into the ownership of the party executing the instrument. The learned judge writing the opinion quotes, with approval, what was said in *Coats* v. *Donnell* (94 N. Y. 177): "That a contract for a lien on property not *in esse* may be effectual in equity to give a lien as between the parties when the property comes into existence and where there are no intervening rights of creditors or third persons seems to be established by several decisions in this court." And he then continues: "*Kribbs* v. *Alford* (120 N. Y. 519), which is relied on by the respondent, is not in conflict but in harmony with these views." It was there said, "Invalidity at law imports nothing more than that a mortgage of property thereafter to be acquired is ineffectual as a grant to pass the legal title. A court of equity in giving effect to such a provision does not put itself in conflict with that principle. It does not hold that a conveyance of that which does not exist operates as a present transfer in equity any more than it does in law. But it construes the instrument as operating by way of present contract to give a lien, which, as between the parties, takes effect and attaches to the subject of it as soon as it comes into the ownership of the party."

In *Rochester Distilling Co.* v. *Rasey* (142 N. Y. 570), which was a case wherein a mortgage was given upon future crops, it was held that such a mortgage on crops, having no actual or potential existence, would not be valid when they came into existence as against an attaching or execution creditor. Similar language used in Thomas on Chattel Mortgages (§ 149) is approved, and thereafter the court says: "It results, from a review of the authorities, that a mortgage

cannot be given future effect as a lien upon personal property which, at the time of its delivery, was not in existence, actually or potentially, when the rights of creditors have intervened. At law such a mortgage must be conceded to be void. The mortgage could have no positive operation to transfer *in præsenti* property not *in esse*. At furthest it might operate by way of a present contract between the parties that the creditor should have a lien upon the property to be subsequently acquired by his debtor, which equity would enforce as against the latter."

Under the authorities, therefore, even if we were to regard this as an agreement to give a verbal chattel mortgage, it would, as between the parties, be valid to the extent that it would be enforcible in equity though void as against creditors or purchasers or lienors who had intervened before possession was taken under it. Fairly construed, the agreement was that the firm was to make the advances to enable the corporation to go on in its business and that at any time in the future when the firm had advanced the amount stipulated, they were entitled, upon the failure of the corporation to pay back such advances, to have a lien for such advances upon the then property of the corporation. We do not find in such an agreement any vice which renders it either *malum in se* or *malum prohibitum*. We think, therefore, that the agreement which was merely voidable as against judgment creditors, purchasers or lienors and which it is conceded was not fraudulent in fact, cannot be regarded as fraudulent in law, it having been carried out and effectuated before the rights of the third persons mentioned had arisen. Though voidable as against one who obtains a lien before actual possession under it, it is perfectly valid as against an assignee or trustee in bankruptcy, who, after the property has been taken under the lien, succeeds to the estate of the bankrupt. (*Barnard* v. *Norwich & W. R. R. Co.*, 14 N. B. R. 469; *Stephens* v. *Meriden B. Co.*, 160 N. Y. 178; *Kribbs* v. *Alford*, 120 id. 519.) The legal status of a trustee in bankruptcy to assail such a transaction as is here involved is no greater or stronger than would be that of a receiver in proceedings supplementary to execution; and in *Stephens* v. *Meriden B. Co.* (*supra*) the court held that an unfiled chattel mortgage is null and void as against judgment creditors of the mortgagor but is good as

between the parties and also as against creditors at large, and that such a receiver cannot maintain an action to recover property taken under an unfiled chattel mortgage where the taking and sale of the mortgaged property were consummated before the appointment of the receiver or the recovery of the judgment on which he was appointed, and at the time of the execution of the mortgage and the sale the creditor represented by the receiver was a general creditor of the mortgagor having no attachment or judgment. So, too, with respect to an assignee for the benefit of creditors, the same rule was applied in *Sheldon* v. *Wickham* (161 N. Y. 500).

The question, however, remains as to whether the transfer constituted a voidable preference under the United States Bankruptcy Act, and the property transferred or its proceeds can be recovered by the trustee in bankruptcy. This question is to be determined in accordance with the 60th section of that act (30 U. S. Stat. at Large, 562) which provides as follows : " A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

" *b*. If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The four controlling factors necessary to render a transaction voidable under section 60 are, *first*, the insolvency of the debtor ; *second*, the obtaining by one creditor of a greater percentage of his debt than any other creditor of the same class ; *third*, the giving of a preference within four months prior to the filing of the petition or after the filing and before the adjudication, and, *fourth*, reasonable cause on the part of the creditor to believe that a preference was intended. (*Sebring* v. *Wellington*, 63 App. Div. 498.) That the corporation was insolvent when the creditor took possession of

the assets is admitted, and the evident effect will be to give the creditor " a greater percentage of his debt than any other creditor of the same class." So, too, if the transaction is to be treated as of the date when possession was taken, the facts would warrant the conclusion that there was reasonable cause for the creditor " to believe that a preference was intended." The crucial factor, therefore, is whether a preference was given " within four months," and this in turn depends upon our conclusion as to whether the transaction is to be treated as of the date when the agreement for the lien was given or is to be considered as of the date when possession was taken. In other words, the question is, did the delivery of the possession to the defendants and their taking possession within four months of bankruptcy constitute a preference within the meaning of the Bankruptcy Act of 1898 ?

We are referred by the appellants to a number of cases which arose under the State law upon the subject of preferences by corporations (1 R. S. 603, § 4; Stock Corporation Law, Laws of 1890, chap. 564, § 48, as amd. by Laws of 1892, chap. 688) and of preferences under the National Banking Law (U. S. R. S. § 5242) and under the former Bankruptcy Act of 1867. (U. S. R. S. § 5128; *Paulding* v. *Chrome Steel Co.*, 94 N. Y. 334; *Elmira Savings Bank* v. *Davis*, 142 id. 590 ; *Scott* v. *Armstrong*, 146 U. S. 499 ; *Brower* v. *Brooklyn Trust Co.*, 50 N. Y. St. Repr. 630 ; *Gunther* v. *Mayer*, 67 Hun, 116; 51 N. Y. St. Repr. 538; *Burdick* v. *Jackson*, 7 Hun, 488; *Miller* v. *Miller Knitting Co.*, 23 Misc. Rep. 404.) The latter case fairly illustrates the reasoning which runs through the opinions in the cases cited. The facts there were that the president of the insolvent corporation promised one Miller that if he would indorse its notes the corporation would give him security. Pursuant to the promise, but when insolvent, the corporation executed a mortgage to secure him for the indorsement so made, and the court held (head note) that the execution was " not invalid as a transfer made by a corporation in contemplation of insolvency nor as a security given by it, when insolvent, with an intent to give a preference to any creditor over other creditors." And upon the subject of the controlling date of such a transaction the opinion reads : " At a time when the corporation was solvent its president agreed with the plaintiff that if he would indorse the paper of the

company up to a certain specified amount, the company would give him security therefor. Acting upon the faith of this promise, the plaintiff indorsed the notes proved in this action. After the company became insolvent, for the purpose of fulfilling the agreement thus made, it executed and delivered the mortgage in suit. The execution and delivery of the mortgage relates to the time of the agreement and simply effectuates it. 'The date of the agreement pursuant to which any transfer is made, and not the day when the conveyance is in fact executed, is to be regarded.' "

In *Wilson* v. *Nelson,* however, decided by the United States Supreme Court in December, 1901 (183 U. S. 191), and which had under consideration the present Bankruptcy Act of 1898, the facts were that a debtor, years before the filing of a petition in bankruptcy, gave to a creditor an irrevocable power of attorney to confess judgment after maturity upon a promissory note of the debtor ; and the creditor within four months before the filing of the petition in bankruptcy against the debtor obtained such judgment and issued execution, and it was held that the failure of the debtor to move before the sale on the execution to vacate or discharge the judgment or to file a voluntary petition in bankruptcy, made the judgment and execution a preference "suffered or permitted" by the debtor. And in the opinion by Mr. Justice Gray he says, speaking of questions arising under the present Bankruptcy Act of 1898 : "In considering these questions, strict regard must be had to the provisions of that act, which, as this court has already had occasion to observe, differ in important respects from those of the earlier bankrupt acts." To this statement we might add that they differ also from the provisions of our own State laws upon the subject of preferences by individuals and by corporations. Mr. Justice Gray in the course of the opinion in that case ( *Wilson* v. *Nelson, supra*) further says : "The act of 1898 makes the result obtained by the creditor, and not the specific intent of the debtor, the essential fact. In the case at bar the warrant of attorney to confess judgment was, indeed, given by the debtor nearly thirteen years before. But being irrevocable and continuing in force, the debtor thereby, without any further act of his, 'suffered or permitted' a judgment to be entered against him within four months before the filing of the petition in bankruptcy, the effect of the enforcement of

which judgment would be to enable the creditor to whom it was given to obtain a greater percentage of his debt than other creditors; and the lien obtained, by which in a proceeding begun within the four months, would be dissolved by the adjudication in bankruptcy, because 'its existence and enforcement will work a preference' * * *.

"The careful change in the language of the provisions of the Bankrupt Act of 1898 from those of the former Bankrupt Acts upon the subject must have been intended by Congress to prevent a debtor from giving a creditor an irrevocable warrant of attorney, which would enable him at any time during the insolvency of the debtor, and within four months before a petition in bankruptcy, to obtain a judgment and levy the execution on all the property of the bankrupt, to the exclusion of his other creditors."

The trend of the decisions in the United States Supreme Court, under the recent Bankruptcy Act, upon the subject of the date of the transfer, is in support of the view that, with respect to an instrument of transfer, it is the time when such instrument is recorded, or when possession is taken, or notice is otherwise brought home to the creditors of the bankrupt, that is controlling. Thus it was held in *Matter of Sheridan* (98 Fed. Rep. 406), as correctly summarized in the head note, that "An agreement to pledge personal property as security for a debt is not executed where the goods are not delivered to the creditor, nor set apart and treated as his property, and, where the creditor takes possession of the property a few days before the filing of a petition in bankruptcy against the debtor, the transaction is voidable as a preference, notwithstanding that the original agreement was made more than four months before that time." (See, also, *Pirie* v. *Chicago Title & Trust Co.*, 182 U. S. 444; *Matter of Klingaman*, 101 Fed. Rep. 691; *Matter of Kindt*, Id. 107; *Crooks* v. *People's Nat. Bank*, 46 App. Div. 339.)

In this latter case the court says: "It is the result or effect of the act done which is declared against, not the manner or method by which it is done. No matter how circuitous the method may be, if the effect of a transfer of property made within four months before the filing of a petition in bankruptcy is to enable any of the bankrupt's creditors to obtain a greater percentage of his debt than others

of the same class, then such transfer is voidable, if the person receiving it or to be benefited thereby, had reasonable cause to believe that it was intended thereby to give a preference."

In the case at bar the effect and result of the possession which the defendants took of the property of the corporation within the four months were to enable them to obtain a greater percentage of their debt, and they had sufficient cause for believing that by taking possession they would obtain a preference. They were entirely familiar with the compromise with the creditors of Smith resulting in the reorganization of the business; the original financial difficulties of the company, the means consisting of the loan from them whereby it was enabled to do business, and the inability of the corporation to repay to them as promised any part of the sum which they had advanced or to continue without further moneys. If the Bankruptcy Act is susceptible of the construction which, under the decisions, has been given to it, that a transfer is to be regarded as of the date when possession is taken, then, though the taking of possession was merely, as in this case, to effectuate an agreement made in good faith and many months before the prohibited time for giving a preference, the transfer, if the creditor has reasonable cause to believe when such possession is taken that a preference was intended, is nevertheless one which, under the act, is voidable, so that the trustee may maintain an action to recover the property or its proceeds.

Upon the ground, therefore, that the transfer here made was a voidable preference, we think the judgment appealed from must be affirmed, with costs.

McLAUGHLIN and LAUGHLIN, JJ., concurred; PATTERSON, J., concurred in result; VAN BRUNT, P. J., dissented.

Judgment affirmed, with costs.