lutely void, and as· to the property attempted to be devised by said clause the testator died intestate, for the reason that the suspension of the ownership of the property is not limited by the lives of two persons in being at the time of the execution of the will, but by a term of years.

The plaintiff in this action, however, in its effort to sustain this clause, relies upon chapter 701 of the Laws of 1893, and particularly upon the case of Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568.

It is undoubtedly true that the case of Allen v. Stevens has been cited and followed for a few years past; but in my opinion the construction of the statute of 1893, as laid·down in that case, has been modified, and the courts have returned once again to the old rule of law which provided that a person may by will devise and bequeath property to a corporation to be formed after his death, if it is therein provided that such corporation shall be so formed and the property vest in it within a period not longer than the lives of two persons in being at the time of the execution of the instrument. See Pers. Prop. Law (Laws 1897, c. 417) § 2; also, Smith v. Chesebrough, 176 N. Y. 317, 68 N. E. 625; and more particularly the case of St. John v. Andrews Institute, 191 N. Y. 267, and more especially at page 278, 83 N. E. 981.

Let the proper findings be prepared in accordance with the above decision and settled before me upon notice.

Ordered accordingly.

_____

(72 Misc. Rep. 201.)

BROWN et al. v. CITY NAT. BANK OF PLATTSBURGH et al.

(Supreme Court, Trial Term, Clinton County. May, 1911.)

1. MECHANICS' LIENS (§ 83*)—ERECTION OF MAUSOLEUM—LIENS OF MATERIALMEN.

Lien Law (Consol. Laws 1909, c. 33) § 120, providing for liens on cemetery structures, does not apply to materialmen or men who have done work upon materials furnished, but only to the men who took the contract for furnishing the mausoleum.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 115; Dec. Dig. § 83.*]

2. BANKRUPTCY (§ 364*)—PROOF OF CLAIM—WAIVER OF LIEN.

One claiming a mechanic's lien under Lien Law (Consol. Laws 1909, c. 33) §§ 3–25, 120–124, waives his lien on proving his claim in bankruptcy against the contractor and voting on the claim and transacting other business at a meeting of the creditors, and cannot afterwards claim it on the ground that his waiver was broader than he intended to make it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 504; Dec. Dig. § 364.*]

3. MECHANICS' LIENS (§ 24*)—MAUSOLEUM—"IMPROVEMENT OF REAL PROPERTY."

The construction of a mausoleum is not "an improvement of real property" within the Lien Law (Consol. Laws 1909, c. 33) §§ 3–25, giving a lien on such structure.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 25; Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 4, pp. 3452–3460; vol. 8, pp. 7682, 7683.]

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. BANKRUPTCY (§ 161\*)—PREFERENCES—INVALIDITY.**

An order by which a creditor of a bankrupt obtains a preference is not void under Bankruptcy Act July 1, 1898, c. 541, § 60, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), unless given within four months before filing of the petition in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.\*]

Action by J. Romaine Brown and another, as executors, etc., of L. L. Smith, deceased, against the City National Bank of Plattsburgh and others. Judgment in interpleader for certain of the defendants.

Conway & Weed, for plaintiffs.

Shedden & Shedden, for defendant City National Bank of Plattsburgh.

Wm. H. Kirkwood, for defendant Vermont Marble Co.

Maurice B. Dean, for defendant Brown.

Thos. B. Cotter, for defendant R. Prescott & Son.

John B. Riley, for defendants John Williams, Inc., and Jones Bros. Co.

Nathan T. Hewitt, for Callanan, trustee.

VAN KIRK, J. This action was brought to recover a judgment in interpleader between the defendants. Said judgment has been entered, and the fund, $11,063.60, has been paid into court. The issues here being tried arise upon the answers filed by the defendants, who are claimants to the said fund or parts thereof.

Pennington & Butler were a firm doing contracting business in the city of Plattsburgh. They had a contract for constructing a mausoleum on the lot of Loyal L. Smith in Riverside Cemetery, city of Plattsburgh, N. Y. The contract was signed by Alfred Pennington, but was the contract of Pennington & Butler with the executors of Smith. The construction of the mausoleum was completed and the work accepted in November, 1909. Disputes arose between the claimants to the fund, and the executors of Smith brought this action. Edward Butler, of Pennington & Butler, died September 9, 1909. On May 31, 1910, an involuntary petition in bankruptcy was filed against Pennington as an individual and as surviving partner of Pennington & Butler. The adjudication in bankruptcy was made June 6, 1910, and Michael J. Callanan, one of the defendants herein, was appointed trustee. The trustee, Callanan, is claiming the entire fund and thus is in conflict with each of his fellow defendants. The defendants and their respective claims are as follows:

(1) The defendant Elliot L. Brown was the architect and claims the balance of his fees in the sum of $952. The contract between the executors of Smith and Pennington determines the rights of Brown. In article 9 of this contract we find specified at what period and condition of the work separate payments are to be made. The total of these payments is $20,160.80, the contract price. This article contains the following:

"The sum to be paid by the owners to the contractor for said work and material." "Such sums shall be paid by the owners to the contractor in current funds only upon the certificate of the architect."

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The claim of the architect is an indebtedness of Pennington & Butler. The architect had no claim against the executors of Smith, who refused to make a contract with him because the architect's father was one of the executors. The contract price which is to be paid to the contractors included the architect's fees, and by the terms of the contract was to be paid to the contractors, and the contractors were to pay the architect. Out of the sums already paid to the contractors, the contractors have paid to the architect the 10 per cent. agreed to be due him. The architect is not the owner of a part of the contract price, and his claim is against the contractors and not against the estate. The trustee did not agree to that part of the statement of facts shown in paragraph numbered 12, nor does defendant's Exhibit 20 affect the rights of the trustee.

(2) R. Prescott & Son have an order (Exhibit 3, attached to the complaint), dated November 21, 1909, addressed to the executors of Smith and to the architect, Brown, requesting that they pay to R. Prescott & Son of Keeseville the sum of $4,000, and charge it against the account for work in the construction of the mausoleum under the contract. This is signed by A. Pennington. It was given for a valuable, but not for a present, consideration. This order was never formally accepted by the executors, but it was drawn against a particular fund for a definite amount, and notice of such order was given at once to the executors and the architect.

(3) The City National Bank of Plattsburgh has an assignment (Exhibit C, attached to the complaint), dated January 10, 1910, of all the right, title, and interest in the contract for the building of the mausoleum and of all moneys and payments due or to grow due thereon, made by Alfred Pennington. In this assignment it is certified that there is due on the contract the sum of $11,136. This assignment was delivered to the bank, and notice was immediately given to the executors. It was for a valuable, but not for a present, consideration. At the time this assignment was made, Pennington & Butler were indebted to the City National Bank in the sum of $15,000.

(4) The Vermont Marble Company has filed a notice of lien (Exhibit D, attached to the complaint), addressed to Silas Turner, county clerk of Clinton county, N. Y., and asserts a lien for the value of labor and materials upon the mausoleum and lot of Smith. The lienor was a subcontractor of Pennington & Butler, or furnished a portion of the materials used by the general contractors in the erection of the mausoleum. The amount of the lien is $2,050, with interest from November 17, 1909. A copy of the notice was served on the executors of Smith. The lien was filed in the county clerk's office of Clinton county January 31, 1910, and also in the office of the clerk of the city of Plattsburgh on the same date; and, by order of the Supreme Court, dated January 28, 1911, the lien was continued for a period of one year. The Riverside Cemetery, in which this mausoleum was built, belonged to the city of Plattsburgh, and the city clerk of Plattsburgh was the clerk of the cemetery association. A claim on behalf of the Vermont Marble Company, verified July 21, 1910, was filed with the trustee in bankruptcy, Callanan, July 25, 1910, in the sum of $2,924.49,

which claim included the amount of said lien. The verified claim contains this:

"Said corporation has not, nor has any person by its order or to the knowledge or belief of said deponent for its use, had or received any manner of security for said debt, excepting a lien filed for $2,050, which is hereby waived."

At the time this waiver was made, this defendant had no other lien than the one above recited.

(5) Jones Bros. Company has filed a notice of lien (Exhibit E, attached to the complaint) on the mausoleum for the sum of $4,884.15, with interest from November 21, 1909, for the unpaid part of the purchase price of materials for said mausoleum, purchased by Alfred Pennington. This notice is dated February 3, 1910, and was filed in the office of the city clerk of the city of Plattsburgh on or about February 8, 1910. A copy of this notice was served on the superintendent of the cemetery within 10 days after it was filed in the city clerk's office.

(6) John Williams, Incorporated, has filed a notice of lien (Exhibit F, attached to the complaint) for the sum of $690 for iron and bronze work for the mausoleum, with interest from December 18, 1909, dated February 4, 1910. This paper was filed on or about April 27, 1910, in the office of the city clerk of the city of Plattsburgh, and a copy thereof was served on the executors. There is no dispute as to the amount of any of the liens above recited or as to the amount due to any claimant.

Defendant Brown, the architect, as appears from the recital of the facts, has not maintained his right to any part of the fund as against the trustee.

Unless the liens filed are valid, the lienors have no rights in the fund as against the trustee. The liens of John Williams, Incorporated, and Jones Bros. Company are for materials furnished to the contractors, Pennington & Butler, for the construction of the mausoleum.

[1] The liens are to be upheld, if at all, under article 5 of the lien law, which provides for liens on monuments, gravestones, and cemetery structures.

Section 120 of this law provides:

"A person furnishing or placing in a cemetery or burial ground a monument, gravestone, inclosure or other structure has a lien thereon for the agreed price thereof or the part remaining unpaid, with interest from the time the amount was due, upon filing with the superintendent or person in charge of such cemetery or burial ground a notice of lien as provided in this article."

Section 122 provides:

"Proceedings to enforce lien. After the service of such notice, an action to recover the amount of the debt and to enforce a lien therefor may be maintained by the lienor against the person with whom the agreement was made for the purchase and erection of such monument, gravestone, inclosure or other structure or for the performance of labor thereon. If such lienor succeeds in establishing such lien, the judgment recovered may authorize him to remove such monument, gravestone, inclosure or other structure from the burial ground or cemetery and to sell the same at public auction to satisfy the amount of such judgment."

Neither of these defendants is a person furnishing or placing in the cemetery a monument, gravestone, or other structure.

This provision of the lien law does not apply to the materialman or to the men who have done work upon materials furnished, but applies only to a man who took the contract for furnishing and did furnish the mausoleum. The reading of section 122, above quoted, supports this construction. Neither of these defendants, John Williams, Incorporated, or the Jones Bros. Company, has any agreement for the construction of the mausoleum, and neither of them could procure a judgment authorizing it to remove the mausoleum. The materials which either of these defendants has furnished are only a part of the materials, and those materials were furnished to the contractor. The redress under a valid lien is drastic. Gravestones, monuments, or structures may be removed by the party holding the lien. Such being the fact, the act must be strictly construed, and a liberal construction is not permitted. A lien cannot be upheld under article 5 of the lien law, except in strict compliance with the terms thereof. Therefore the liens filed by them are not valid liens against the real estate described in the notice or writing filed.

[2] The lien of the Vermont Marble Company is filed under both article 2 and article 5 of the lien law. This defendant has waived its lien, if it had any. Under the bankruptcy law it is necessary, in order to prove a claim and take part in the creditors' meeting, that the lien or preference or security should be waived. Section 56b of the bankruptcy law provides:

, "Creditors holding claims which are secured or have priority shall not, in respect to such claims, be entitled to vote at creditors' meetings, nor shall such claims be counted in computing either the number of creditors or the amount of their claims, unless the amounts of such claims exceed the values of such securities or priorities, and then only for such excess."

So that the lien of the Vermont Marble Company must be deemed as waived and as giving the Vermont Marble Company no preference. The attorney for the lienor Vermont Marble Company has testified that the wording written in the proof of claim, waiving the lien, is broader than was intended, and that the mistake was made by his clerk. He says that the intention was to waive any lien which the Vermont Marble Company had, or it was claimed by their creditors or adversaries that it had, upon the property of the bankrupt, and that it was not intended to be a waiver of the lien upon the mausoleum. The lien, if collected, must be collected out of the proceeds of the contract, and these proceeds were the property of the bankrupt. If it was intended to waive the lien upon property of the bankrupts, then it was a waiver of the lien upon these funds that have been paid into court. There is no dispute but that the whole amount out of which the payment of the lien might be secured is now in the hands of the court. These funds would be the chief assets of the trustee in bankruptcy. The Vermont Marble Company proved its claim and voted at the creditors' meeting, securing that right by waiving its lien upon the property of the bankrupt. The defendant having exercised its election to come in with the other creditors, and by so doing having enjoyed the benefit of taking

part in the election of the trustee and in such other business as came before the creditors' meeting, the court cannot now relieve it of its waiver. Besides, under the above holding as to the lien of John Williams, Incorporated, and Jones Bros. Company, this defendant has no lien under article 5 of the lien law.

[3] Also I am of the opinion that article 2 of the lien law does not apply to the construction of a mausoleum in a cemetery. The construction of a mausoleum is not an "improvement of real property" within the meaning of that section. Burial lots are the resting places of the dead. Article 5 of the lien law applies specifically to monuments, gravestones, and cemetery structures; and liens are not allowed under that article to those who furnished materials or performed labor, but only to the person furnishing or placing in a cemetery or burial lot such structure. This subject was referred to in Brace v. City of Gloversville, 167 N. Y. 455, 60 N. E. 780; and, in discussing whether or not section 15 of the lien law applies to contracts for public buildings, the court says:

"While it is true that some sections of article 1 of the lien law, entitled 'Mechanics' Liens,' apply only to private property and others only to public improvements, the fact that the regulations as to both classes of liens are prescribed by the same article of the same statute indicates a clear intention on the part of the Legislature to assimilate the law as to the two classes, so far as was practicable. The lien law is divided into several articles dealing with different subjects: (1) Mechanics' liens. (2) Liens on vessels. (3) Liens on monuments, etc. If a lien for labor or materials furnished in the prosecution of public works is to be deemed an entirely distinct matter from that in the case of private real property, it is difficult to understand why it was not made the subject of a distinct article."

The fair inference from this reasoning would be that, being in a distinct article, the provisions as to cemetery structures in article 5 are entirely separate from the other provisions in the other articles of the chapter, and that section 15 does not apply to liens for cemetery structures. This construction of the lien law is further suggested by section 40, which is the first section of article 3, which reads as follows:

"This article is to be construed in connection with article 2 of this chapter and provides for the proceedings for the enforcement of liens for labor performed and materials furnished in the improvement of real property created by such article."

Article 4 and article 5 have no such introductory provision requiring them to be construed with other articles of this law. Article 5 provides for the lien and its enforcement. If this is the true construction, then the filing of a lien by the Vermont Marble Company under article 2 did not create a valid lien upon the mausoleum; so that I conclude that the Vermont Marble Company has in no event a valid lien, and, consequently, when the waiver was executed, the marble company was deprived of no rights.

The Vermont Marble Company, therefore, has no claim to any part of the fund as against the trustee in bankruptcy.

The other two defendants making claims against the trustee in bankruptcy are R. Prescott & Son and the City National Bank of Plattsburgh. These two claims are attacked solely on the ground that they

create illegal preferences under section 60 of the bankruptcy law. If they do not offend against this section, the order and the assignment are valid transfers. As above stated, section 15 of the lien law does not apply to this case; and therefore it was not necessary that the order or the assignment should have been filed in order to make valid transfers of funds. Section 60 provides as follows:

"Preferred creditors. (a) A person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, * * * made a transfer of any of his property and the effect of the enforcement of such transfer * * * will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. (b) If a bankrupt shall have given a preference and the person receiving it * * * or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And, for the purpose of such recovery, * * * any state court which would have had jurisdiction if bankruptcy had not intervened shall have concurrent jurisdiction."

The evidence shows that, at the time the order was given to Prescott & Son, November 23, 1909, and at the time the assignment was given to the City National Bank, Pennington as an individual and Pennington as surviving partner of Pennington & Butler was in fact insolvent; but at neither time did Prescott & Son, or their agent, or the City National Bank, or its agent, actually know of the insolvency. It was known, however, both at the time the order was given and at the time the assignment was given, that Pennington & Butler were embarrassed and found it difficult to pay their debts and obligations; and the only conclusion the court can arrive at is that each of these transfers enabled the creditor to obtain a greater percentage of his debt than any other creditor of the same class, and that Prescott & Son and the bank, through their agents acting for them, each had reasonable cause to believe that the transfer to it was thereby intended to give a preference.

[4] Still my understanding is that the order and assignment cannot be set aside, because one element is lacking, viz., that neither was given within four months of the filing of the petition. In Sebring v. Wellington, 63 App. Div. 499, 71 N. Y. Supp. 789, the court said:

"It seems to be conceded that, in order to render a preference voidable within the provisions of this section, it is necessary to establish four facts, viz.: (1) The insolvency of the transferror; (2) the obtaining by one creditor of a greater percentage of his debt than any other creditor of the same class; (3) the giving of a preference within four months before the filing of a petition in bankruptcy; and (4) reasonable cause on the part of the creditor to believe that a preference was intended."

The same is held in Mathews v. Hardt, 79 App. Div. 570, 578, 80 N. Y. Supp. 462. A similar statement is made in Collier on Bankruptcy (6th Ed.) p. 476, in the section beginning, "The elements of a preference."

It not being necessary to comply with section 15 of the lien law, a preference was not given in either case within four months before the filing of the petition. Both the order of Prescott & Son and the assignment of the City National Bank are valid and legal.

Findings and decision are directed accordingly.

Judgment accordingly.