(23 Misc. Rep. 404.)

MILLER v. MILLER KNITTING CO. et al.

(Supreme Court, Trial Term, Columbia County. January, 1898.)

1. MORTGAGE—CONDITION—RIGHT OF ACTION.
   A mortgage conditioned to stand as security for payment of all sums the mortgagee shall pay, or be liable to pay on account of indorsing, secures against liability; so that it is enough, to authorize action thereon, that the indorsed notes are due, and have been protested.
2. SAME—FORECLOSURE—DECREE.
   Decree in action to foreclose mortgage given to indorser to secure against liability may cover notes which have matured, and on which the indorser's

liability has become fixed by demand and notice since commencement of the action.

**8. FRAUDULENT CONVEYANCES.**

A mortgage to secure liability as indorser, given by an insolvent pursuant to an agreement before insolvency, in reliance on which the mortgagee had indorsed the mortgagor's notes, is not in fraud of creditors.

Action by Almon Miller against the Miller Knitting Company and others to foreclose a mortgage.

John Cadman, for plaintiff.

A. Frank B. Chace, for receiver.

FURSMAN, J. In 1882 Samuel D. Miller was carrying on the knitting business at or near Mellenville, Columbia county, N. Y., and in November of that year executed and delivered to the plaintiff a mortgage upon his real estate to secure the plaintiff against loss by reason of his indorsement of the paper of Samuel "not exceeding $20,000 in the aggregate." Afterwards Samuel conveyed an interest in the mortgaged premises to his two sons, William C. Miller and Sanford S. Miller, and entered into co-partnership with them in the same business under the firm name and style of Samuel D. Miller & Sons. The plaintiff indorsed paper to a large amount for Samuel, and after the formation of the co-partnership continued to indorse the paper of the firm. In January, 1890, the co-partnership members formed themselves into a corporation under the name of the Miller Knitting Company, of which they were the only stockholders. Of this company Samuel D. Miller was president. Upon the formation of the corporation the assets of the co-partnership, including the real estate covered by the mortgage, were transferred to it, and as the paper of the partnership fell due that of the corporation was substituted for it. At this time, and down to January, 1893, the corporation was solvent, but afterwards became insolvent, and was so at the time of the execution and delivery of the mortgage in suit, January 25, 1895. In February, 1895, a receiver was appointed on the petition of the corporation. At the formation of the corporation its president agreed with the plaintiff that the corporation would secure him by mortgage for all his indorsements of its paper, and, upon the faith of this agreement the plaintiff indorsed such paper to an aggregate amount of $31,935.38. This indebtedness is represented by various notes now held and owned by the National Hudson River Bank and the First National Bank of Hudson, respectively, and they are made parties to this action. On the 25th of January, 1895, the corporation, in pursuance of the agreement above mentioned, executed and delivered to the plaintiff the mortgage now sought to be foreclosed, conditioned that it should stand as a "security for the payment of all such sum or sums of money as said Almon Miller shall pay, or be liable to pay, on account of indorsing," etc., not exceeding in principal $33,333. Upon giving this mortgage the former mortgage given by Samuel was formally canceled and satisfied. The plaintiff has not paid any of the notes indorsed by him, and only one of them was due and under protest when this action was commenced, but all of the others had fallen due and been protested be-

fore the trial.   Upon these facts it is insisted on behalf of the receiver that this action cannot be maintained, because—First, the plaintiff has not paid any of the notes indorsed by him, and has not, therefore, sustained any actual loss; and, second, that the mortgage was given when the corporation was insolvent, and is, therefore, invalid under the Revised Statutes (part 1, c. 18, tit. 4, § 4), forbidding any assignment or transfer by a corporation of any of its property, when in contemplation of insolvency, and declaring every such assignment to be absolutely void; and under the act of 1892 (chapter 688, § 48), declaring invalid any conveyance, assignment, or transfer of any property, and of any payment made, judgment suffered, lien created, or security given by any corporation when insolvent with the intent to give a preference to any creditor over other creditors.

In this case the condition of the mortgage is not a mere indemnity against loss, but is an indemnity against liability.   There is a manifest distinction between an agreement to save harmless, and an agreement to save from liability.   In the former case actual damage must be shown, while in the latter an action may be sustained without showing that the party has been damnified.   This distinction is very clearly pointed out in Gilbert v. Wiman, 1 N. Y. 550–553, where it is said that in a contract of indemnity, where the obligation is to save the obligee from a charge or liability, the contract is broken when such charge or liability is incurred; but where the obligation is that the party indemnified shall not sustain damage by reason of any liability incurred there is no breach until actual damage is sustained. The same principle is recognized in Crippen v. Thompson, 6 Barb. 532, 535; Rockfeller v. Donnelly, 8 Cow. 623; Chace v. Hinman, 8 Wend. 452; Kip v. Brigham, 6 Johns. 158, 7 Johns. 168.   In Bank v. Bigler, 83 N. Y. 51, the condition of the mortgage was that it was to be a continuing security and indemnity against all liabilities the mortgagees had incurred, or might thereafter incur, as indorsers, acceptors, or sureties, in any form; and it was held that the mortgage was not one of indemnity merely, but was a security against all liabilities; that it was, therefore, not essential to a recovery to show that damage had been sustained; and that the right of the mortgagees to resort to the security arose when their liability as indorsers became fixed.   See, also, Selover v. Harpending, 18 Abb. N. C., at page 253. It is said, also, that inasmuch as only one of the notes was due when this action was brought, a foreclosure cannot be had as to the notes not then due.   All of them, however, are now due, and the plaintiff's liability thereon has become fixed by demand and notice.   In Asendorf v. Meyer, 8 Daly, 278, it was held that in an action to foreclose a mortgage, where only a part of the sum secured by it is due and payable at the commencement of the action, the court may make a decree of sale to cover not only that sum, but also such other sums as may be due at the time of making the decree.   See Malcolm v. Allen, 49 N. Y. 448; and 2 Rev. St. p. 193, §§ 161–166.

As to the remaining objection insisted upon by the defendant receiver, I am persuaded that this mortgage is not within the prohibition contained in either of the statutes above cited.   At a time when the corporation was solvent its president agreed with the plain-

tiff that, if he would indorse the paper of the company up to a certain specified amount, the company would give him security therefor. Acting upon the faith of this promise, the plaintiff indorsed the notes proved in this action. After the company became insolvent, for the purpose of fulfilling the agreement thus made, it executed and delivered the mortgage in suit. The execution and delivery of the mortgage relates to the time of the agreement, and simply effectuates it. "The date of the agreement pursuant to which any transfer is made, and not the day when the conveyance is in fact executed, is to be regarded." Paulding v. Steel Co., 94 N. Y., at page 340, and cases there cited. Having acted upon the faith of the promise, the plaintiff might have maintained an action to compel a specific performance of it, and this without regard to whether the company was solvent or insolvent. In Brower v. Trust Co. (Sup.) 21 N. Y. Supp. 324, the action was to set aside three mortgages given by the Ridgewood Ice Company (a corporation) to the defendant. One of these mortgages was assailed on the ground that it was made in anticipation of insolvency. It appeared that this particular mortgage was given in pursuance of an agreement made by one of the officers of the company to secure the mortgagee for certain loans. The general term of the Second department held that, the corporation having had the benefit of the loans, the authority of the officer to make the agreement could not be questioned, and, upon the authority of Paulding v. Steel Co., 94 N. Y. 334, that such a mortgage, though made when the company was actually insolvent, and known to be so, is not prohibited by the statute. See, also, Braem v. Bank (Sup.) 6 N. Y. Supp. 846. Where, at a meeting of the stockholders of a solvent corporation, it was voted to give a mortgage to secure bonds to be issued to a trustee to secure a debt to a bank for moneys already had and future loans, and the bonds were issued, but the mortgage was not executed until after the corporation became insolvent, it was held that the mortgage was valid, and was not in violation of the statute. Gunther v. Mayer (Sup.) 22 N. Y. Supp. 50. In Bank v. Davis, 142 N. Y. 590, 37 N. E. 646, the court of appeals, at page 596, 142 N. Y., and page 647, 37 N. E., adopt the language and approve the principle stated by Chief Justice Fuller in Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148:

"Undoubtedly, any disposition by a national bank, being insolvent, or in contemplation of insolvency, of its choses in action, securities, or other assets, made to prevent their application to the payment of its circulating notes, or to prefer one creditor to another, is forbidden; but liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency, and not in contemplation thereof, are not invalidated."

The case arose under the national banking act, and the question was whether the state banking law, giving preference to savings banks in certain cases, was in conflict therewith. Section 5242 of the Revised Statutes of the United States (the national banking act) is as broad and stringent as the state laws above cited, but it was held that the national and state banking laws were not in conflict, and the preference was upheld. This principle applies to the present case. Here are equities "arising by express agreement," entered in-

to at a time when the corporation was solvent, and when its action was in no wise affected by the statutes forbidding the transfer of property, or giving security by insolvent corporations, or corporations contemplating insolvency. The giving of this mortgage was simply an honest fulfillment of such express agreement, and, though done after the corporation had become insolvent, it is not by that circumstance rendered invalid. Paulding v. Steel Co., 94 N. Y. 334, above cited. The notes in suit are still held and owned by the National Hudson River Bank and the First National Bank of Hudson, who are parties defendant in this action. There can be no valid objection to a distribution between them of the moneys arising from the sale of the mortgaged premises under the foreclosure according to their respective rights. All the parties interested being before the court, a complete determination of the whole matter is proper. Code Civ. Proc. §§ 447, 452; Derham v. Lee, 87 N. Y. 599, 604. Moreover, the right to foreclose for the payment of these notes, or for the protection of the plaintiff against liability upon them being established, the receiver has no interest in the question. The plaintiff should have a decree of foreclosure and sale of the mortgaged premises, and a distribution of the avails between the defendants' banks, according to their respective rights; the overplus, if any, to be paid to the receiver.

Ordered accordingly.