## JEAN R. BRANDRUP v. EMPIRE STATE SURETY COMPANY.[1]

July 15, 1910.

Nos. 16,507—(96).

**Contractor's bond — liability of surety company — extra work.**

Defendant appellant, a surety company, became surety upon a bond guaranteeing faithful performance of a building contract. Upon application for the bond the contract price was given as $6,900. The verbal understanding of the parties was then $7,500. Subsequently, but without intent to defraud, a written contract was entered into for $6,900, with an oral agreement for $600 additional. *Held:*

1. The evidence justified a finding that the contractor breached the contract.

2. The payments made the contractor being within the amounts agreed to be paid during construction, it was immaterial that such amounts were paid without the written order of the architect.

3. The value of the extra work being duly credited, no prejudice resulted to the surety because the extra work and its price were not agreed upon in writing.

4. The plaintiff could recover for liens discharged by payments made after commencement of this action and before the trial.

5. A surety company, which engages for hire in the business of issuing guaranty bonds, is held to a stricter liability than the ordinary surety.

6. The written contract bound the parties to it; but plaintiff, having before the execution of the bond or contract agreed to pay more than the amount stated in the bond, cannot, as against the surety company, enhance his dam-

[1]Reported in 127 N. W. 424.

ages by claiming the price fixed by the written contract subsequently made. In finding the amount for which the surety is liable, the contract price must be held to be the amount actually agreed upon, to wit, $7,500.

Action in the district court for Blue Earth county to recover $2,000 from Charles G. Brazier and the Empire State Surety Company upon their bond to secure the execution of Brazier's building contract with plaintiff.

The complaint alleged the making of a written contract for the work for the sum of $6,900; the abandonment of the work by Brazier; the payment by plaintiff of various sums for labor and liens filed against the premises; due performance by plaintiff of all the terms of the contract and bond, and refusal of defendant company to pay plaintiff. The surety company alone answered, denied the making of the contract for the sum of $6,900 and alleged it was for the sum of $7,500; alleged false representations to defendant company by Brazier as to the amount of the contract, and the execution of the bond wholly in reliance upon such statements; that after the making of the false representations and prior to the execution of the bond, plaintiff and Brazier caused the prior contract to be reduced to writing, but fraudulently and without the knowledge of defendant company caused $6,900 to be inserted therein, whereas the true consideration was $7,500; that the bond was void because the terms of the contract relating to payments to the contractor upon written orders of the architect were abandoned by plaintiff and Brazier without the knowledge of defendant company, and that payments by plaintiff without such orders amounted to $5,490.85; that plaintiff and Brazier abandoned the terms of the contract in respect to making alterations in the plan upon the written order of plaintiff, and material alterations from the contract were made by Brazier under the oral orders of plaintiff without any written order, by reason of which the cost was increased several thousand dollars.

The case was tried before Pfau, J., who found in favor of plaintiff in the sum of $1,702.84. From the judgment entered pursuant to the findings, defendant company appealed. Modified by reducing the amount of the judgment against defendant company to $1,102.86, interest, and costs.

*Boutelle & Chase* and *Arthur M. Higgins,* for appellant.
*Benjamin Taylor,* for respondent.

O'BRIEN, J.

Plaintiff received bids for the remodeling of a building. Defendant Brazier proposed to perform the contract for $6,900. The other bids received were much higher. Plaintiff and his architect considered the bid a very low one, and suggested to Brazier that he had made a mistake, and insisted that he go over the plans again. The day following Brazier reported that he had made a mistake of $1,000. Plaintiff testified: "He said he could do it all right for $6,900, and then I said that if he did, and he did the work in good shape, and got it done on time, November first, I think it was, I said I would give him $600. I said that I would make him a present of $600. It was left that way." The defendant Brazier testified that, after the conversation with reference to the mistake, the plaintiff turned to him and said: " 'You say, if it had only been a difference of $300 or $400, you would not have said anything about it. Now, if I would give you $7,500, would you do it?' and I said I would. 'Well,' Mr. Brandrup said, 'I will give you $7,500.' Then he said, 'You had better be seeing after a bond,' and I told him I would. Nothing more was said then, and I left the office." Subsequently the plaintiff and defendant went together to the agent of the defendant surety company for the purpose of procuring a bond guaranteeing the faithful performance by defendant of the contract. The contract price was stated to be $6,900, and the bond executed in the penal sum of $2,000. After making the application for the bond, the plaintiff and Brazier went to the architect's office and found prepared for signature the contract, in which the price was stated at $7,500, and thereupon that figure was erased, and $6,900 substituted.

The architect testified: "The day the contract was drawn up Brandrup appeared and said that they had satisfactory advice on everything, and that I should go ahead and draw up the contract for $7,500, which I did then, and then in the afternoon Brandrup and Brazier appeared, and Brazier called Brandrup's attention to

the difference in his bid and the price stated in the contract, and I was told to change it, which I did. I erased the $7,500, and substituted the original figures, $6,900. Then Brandrup stated that he would like very much to have Brazier do this work, and he told him if he did this work, and got it finished on time, and got it finished without any trouble to him, that he would comply with an offer that Brandrup had made, which was this, and I heard Brazier say the same, that was this: That Brandrup would draw up this contract with him; then he would do all the extra work that there was to do at cost, without any profit to himself; that is, he explained it this way: He says, 'Now if you want to make any changes, we will send to the mill company and get figures, and whatever that mill bill is, if you approve of it, that will be the cost of the material, and the labor will be according to the pay roll, without any profit to me.' And for this consideration Brazier was to get $600. That is the conversation and promise that took place before the contract was signed, and it was repeated after the contract was signed; that whatever extra work was done, whatever it might be, was to be done in that way, and then Brandrup started out after the contract was signed, and Brazier stayed there, and after Brandrup was gone I gave Brazier quite a severe talking to for entering into any such an agreement."

This action was brought by plaintiff to recover upon the bond; it being claimed that Brazier had defaulted in the performance of his contract. The court found in favor of the plaintiff, directing judgment against both defendants for the sum of $1,702.84, for which amount, with interest and costs, judgment was subsequently entered. Defendant surety company appeals from the judgment.

The court found the contract price to have been $6,900; extra work and material to the amount of $995; that Brazier had defaulted in the performance of his contract, and plaintiff necessarily expended in the completion thereof $125.59, and it would cost in addition the sum of $174.41 to entirely complete the contract; that plaintiff paid to Brazier $5,490.85, to lienholders $3,806.99, making a total cost to plaintiff of $9,597.84, from which, if there is deducted the contract price, $6,900, and the value of the extras, $995, or, in all, the sum of $7,895, there remains the sum for which judgment was or-

dered.   The assignments of error present questions which may be considered in the order following:

1. The evidence justifies the finding that defendant Brazier breached the contract.   It appears that he personally absented himself from the work, and his foreman continued in the performance of the contract for some time.   Even if it be conceded that the plaintiff advised the foreman to cease work, we cannot say, under the evidence, that it conclusively appears that plaintiff was not justified in so doing.   The evidence is not of a character which would justify us in setting aside the finding of the court upon this question.

2. The contract provided that payments should be made only upon the written order of the architect, and that no more than eighty per cent. of the entire amount should be paid until the final completion of the work.   Plaintiff made payments without a written order from the architect; but the payments so made were kept inside of the eighty per cent. to which the defendant Brazier was entitled during the progress of the work.   We can see no prejudice resulting to the surety company from this conduct.   It has been held that the payment of an excessive amount is prejudicial to the surety; but the distinction between such a case and the waiver of a written order is apparent.   The payment of an excessive amount might easily result in imposing an unfair liability upon the surety; but to pay an amount to which the builder was entitled, and waiving only the formality of a written order, would be without prejudice.

3. Extra work was performed by the contractor without a written order or agreement for it.   The contract contained provisions which show that the possibility of extra work was contemplated, but provided for a written agreement therefor.   This was not such a departure from the contract as relieved the surety from liability. Credit was given the defendants in the findings of the court for the amount found to be the value of the extra work, and, this being true, it would seem to be immaterial whether or not the performance of extra work was of greater value than found by the court; but a consideration of the evidence does not convince us that this finding should be interfered with.

4. Plaintiff was credited with the amount paid by him for the

discharge of liens filed before the bringing of this action, but not paid until a short time before the trial. This is claimed as error, and it is further claimed that the action was prematurely brought. Where there has been a breach of contract, and a party to it has a cause of action for the breach, he may bring his action immediately, and the damages to be allowed are those sustained up to the time of the trial. 10 Am. & Eng. Enc. (1st Ed.) 418; Spear v. Stacy, 26 Vt. 61; Miller v. Miller, 23 Misc. 404, 52 N. Y. Supp. 184; 1 Sutherland, Damages (3d Ed.) § 117. The evidence was sufficient to establish the validity of the liens and that plaintiff was compelled to expend the money credited for their discharge. 27 Cyc. 309.

5. The most perplexing question presented by this appeal is as to the effect of the change in the contract price. When the parties applied to the surety company for the bond, no written contract had been entered into, and the verbal understanding at that time was undoubtedly for the payment by plaintiff of $7,500. It does not appear why the parties gave the price to the agent of the bonding company as $6,900; but it does appear that the reason that the amount was changed in the subsequently signed written contract from $7,500 to $6,900 was that the lower sum had been named in the bond. The testimony is also convincing that the parties did not intend the amount as stated in the written contract to be controlling, but regarded it as a conventional statement, necessary to make the contract conform to the bond. The record would not justify us in imputing any intentional bad faith to any of the parties; but we cannot avoid the conclusion that the surety has suffered, at least to the extent of the change. It is true that as between the parties to the contract, the writing necessarily controls. The surety company, however, was not a party to the contract, and it is difficult to see any reason why it should not be at liberty to insist that the plaintiff has not been damaged to the extent which appears from considering the written contract only.

The evidence indicates that all conversant with the circumstances considered $6,900 too small a price. The architect and the plaintiff evidently thought it doubtful that the contract could be performed for that sum, and before approaching the bond company the plaintiff

had in fact agreed to pay $7,500. We are unwilling to hold that a. surety of any kind can be compelled to sustain a loss which must have appeared inevitable to every other party to the bond, when he was, left in ignorance of the circumstances forecasting such result.

We have with considerable hesitation concluded that under the facts of this case the appellant surety company should not, as it claims it should, be entirely relieved from liability, but that it must be credited with $600 more than the amount allowed by the trial court.

In coming to this conclusion we have taken into consideration the fact that the surety is one who for hire executes bonds of this character, which in their nature more nearly approach insurance policies than ordinary contracts guaranteeing the fulfilment by another of some obligation resting upon him. Being thus engaged in business of that character for hire, it must be held to a stricter accountability for its own acts and conduct than would a surety who, without consideration, assumed a similar obligation. Lakeside Land Co. v. Empire State Surety Co., 105 Minn. 213, 117 N. W. 431. It executed a bond guaranteeing the performance of a contract for $6,900, without any inquiry as to the probability of its being fulfilled. The written contract actually made, and which was binding upon the parties to it, was for that amount, so that, strictly construed, the contract was within the recitals of the bond and in accordance with the representations made to the surety company. The plaintiff, however, cannot be permitted to enhance his actual damages by the part he took in inserting in the written contract a smaller price than he had previously agreed to pay. The defendant Brazier is bound by the written contract; but as to the surety company we hold the contract price to have been in fact $7,500, and plaintiff's damages must be calculated upon that basis.

The judgment against the defendant surety company is directed to be amended, so as to be for the sum of $1,102.86, principal, interest thereon, and the costs as originally taxed.