# CITY OF FERGUS FALLS v. ILLINOIS SURETY COMPANY.[1]

December 2, 1910.

Nos. 16,801—(114).

**Release of surety by excess payments to contractor.**
> While payments to a contractor in excess of the amounts stipulated in the contract will release a surety company pro tanto, mere irregularities in the issuance of estimates upon which such payments are based will not so release it, unless actual prejudice has resulted.

**Same — unlawful sharing of profits with engineer.**
> A secret and unlawful agreement between the contractor and the engineer in charge to share in the profits of the contract does not release the surety.

[1]Reported in 128 N. W. 820.

**City charter — completion of contract by city.**

A charter provision of a municipality, providing, in case of default by a contractor in the performance of a public improvement, that the city shall furnish the labor and materials necessary to complete the contract, is complied with by letting one or more contracts for such completion.

**Extra work not a violation of contract.**

When a contract provides for the ordering of extra work, the requiring of such extras does not violate or change the contract, so as to release the surety.

**New contracts let after default.**

Unless the new contracts let after the default for the completion of the original contract differ so materially from the original as to amount to a departure from it, resulting in enhanced cost, the surety is not released.

**Irregular estimates not exceeding agreed percentage.**

Although the estimates for payment during construction contain improper items, if the amount actually paid does not exceed the stipulated percentage of the amount which might in good faith be properly allowed, the surety is not discharged.

**Value of extra work performed.**

In an action upon a contractor's bond, after default, when it appears that the original contractor performed extra work, its value should be added to the contract price, and the sum so found deducted from the amount the obligee was compelled to pay.

Action in the district court for Otter Tail county to recover $16,-097.35 upon a bond executed to secure to plaintiff the performance of a contract for the erection of an electric lighting plant and dam. The complaint, in addition to the allegations contained in the opinion, stated that the work done by the contractor amounted to $17,-433.70, and payments to him to $13,075.35; that he abandoned the work in November, 1907, and the mayor and common council relet the work in the manner provided by the city charter in two contracts, one for $40,000 and the other for $4,382. The answer set up that the estimates of the engineer were fraudulent and far in excess of the value of the work done; that after the execution of the bond by defendant the plans and specifications were materially changed, whereby the cost was increased $1,200, and, that the contracts upon reletting were illegal under the terms of plaintiff's charter. The

facts are stated in the opinion. The case was tried before Taylor, J., who found as conclusion of law that plaintiff was entitled to recover $8,233.95. From an order denying defendant's motion for a new trial, it appealed. Affirmed unless plaintiff, within twenty days after filing the remittitur, consent in writing to a reduction of the judgment to $7,103.53, with interest from July 20, 1908.

*J. W. Mason* and *A. J. Hopkins,* for appellant.

*N. F. Field,* for respondent.

O'BRIEN, J.

One Cortlandt F. Ames entered into a contract with plaintiff for the construction by him of a concrete dam and power house in the city of Fergus Falls, according to plans and specifications prepared by Russell S. Feurtado, engineer, for the sum of $47,235. The fifteenth paragraph of the contract was as follows: "The contractor shall be entitled to and receive payments from estimates on his contract during the progress of the work. Said estimate to be made every two weeks by the consulting engineer, and approved by at least two members of the water and light commission, and said payments shall cover all work and labor done and materials used and on hand for the construction of the dam proper, but not machinery and electrical appliances. Said payment to be seventy-five per cent. of the total amount covering labor and work done and materials used and on hand for the construction of the dam proper. Before any partial payments shall be allowed, the contractor shall file the affidavit provided for by section 142 of chapter 10 of the city charter of said city. The balance of the contract price shall be paid when the contract is fully performed and the plant has been accepted by the city; such acceptance not to be more than fifteen (15) days after it is completed."

The defendant became surety upon the bond given by Ames to secure the carrying out of his contract. Ames entered upon performance, and from time to time received estimates purporting to be issued pursuant to the contract for work done by him. The estimates, which in the aggregate amounted to $17,433.70, were issued by the engineer and approved by at least two members of the water

and light commission, and Ames received upon such estimates the sum of $11,086.95. At this point Ames became insolvent and defaulted in the performance of the contract, whereupon the municipality proceeded to advertise for bids for its completion. In doing so the city divided the work between two contractors, one for the electric apparatus required for the sum of $4,382, and another for the remaining part of the contract for the sum of $40,000, payable $38,-000 cash and $2,000 credit for material. These amounts were paid, making the total payments by the city $55,468.95, an overpayment upon the basis of the original contract price of $8,233.95, for which amount judgment against the defendant was directed in the court below. Certain additional facts will be stated in appropriate portions of this opinion.

1. Defendant claims it was released as a surety, because the estimates allowed the contractor were not made pursuant to the contract. With the possible exception of being accompanied by an affidavit upon the part of the contractor, as required by the provisions of the charter of the municipality, the estimates were regular in form. They were issued by the engineer and approved by the required number of water and light commissioners. Defendant sought to impeach the estimates upon the ground of fraud between the engineer and contractor, and upon the further ground that the members of the water and light commission approved the estimates without any investigation as to their truthfulness, and that their action in this respect was purely perfunctory. The question of fraud between the engineer and contractor will be necessarily again referred to, and we cannot agree with defendant's contention that the failure upon the part of the members of the commission to make an independent examination as to the correctness of the estimates would be sufficient, in case of an excess payment alone, without a showing of actual fraud, or such gross neglect as would imply fraud, to release the surety.

It is now the settled doctrine of this court that, to entitle a surety of the character of the defendant to be released from its bond, it must not only establish a departure by the obligee from the terms of the bond, but, in addition, that such departure has been to the

112 M.—30.

substantial prejudice of the surety. Brandrup v. Empire State Surety Co., 111 Minn. 376, 127 N. W. 424. It is also settled that excess payments to the contractors do prejudice the surety, at least pro tanto. Allen v. Eneroth, 111 Minn. 395, 127 N. W. 426. What the defendant was entitled to in this case was that no more than seventy-five per cent. of the value of the work actually done should be paid the contractor during the course of the performance of the contract. If its right in this respect was preserved, the details of the transaction between the municipality and the contractor would necessarily not be prejudicial to the defendant.

2. The contractor testified that the engineer was interested with him in the contract as a partner, and because of this it is argued that the contract was void under the charter of the municipality. There was no evidence that this relation between the engineer and the contractor, if it existed in fact, was known to the public officers of the city, although there was some evidence that there were rumors to that effect. What the result would be, had the public officers of the city knowingly entered into the contract with a person who by the charter was forbidden to make such contract, is a question we are not called upon to decide. The argument here is that, because of secret improper conduct by the contractor and the engineer, the contractor's surety should be relieved from responsibility to the municipality; although the purpose and object of the bond was to guarantee the municipality against his improper conduct.

While in many respects the engineer undoubtedly represented the municipality, his act in this instance would not be the act of the city, so as to release the surety. It was claimed by plaintiff that, before making the bond, the defendant was informed that some sort of partnership existed between the engineer and contractor. But entirely aside from this question, and entirely aside from certain evidence introduced by the plaintiff with reference to denials of any partnership made by the contractor to members of the city council, we are satisfied that this defense cannot be sustained.

3. It is claimed that the method adopted by the plaintiff for the completion of the contract, viz., advertising for bids and separating the uncompleted portion into two contracts, was unauthorized and

beyond its authority; that under plaintiff's charter it was required to furnish the material and labor necessary to complete the work and charge the expenses to the contractor. We cannot agree with this contention.

In securing the completion of the work through contractors, the municipality did furnish the material and labor necessary to do so; and in advertising for bids it complied with the charter provision having reference to public improvements generally. We find nothing contradictory in these provisions, but think they were both given effect by the method adopted; and we cannot overlook the fact that it is sound public policy to require municipalities to perform public works of this magnitude through contractors, after open and public competition. There was no evidence tending to show that the prices at which these contracts were let were unduly excessive; nor was it shown that any prejudice resulted to the defendant from the method adopted by the plaintiff for the completion of the improvement.

4. After the execution of the bond, it was decided to extend the depth of the foundation for the dam. The cost of this additional work was included in the estimates allowed the contractor. This is claimed as an alteration of the contract which released the surety. Section 10 of the Ames contract reads as follows: "The contractor agrees to do such extra work as may be necessary for the completion of the job, and shall receive as compensation therefor whatever labor and material he shall have paid for, plus ten per cent. of such cost." The extension of the foundation was clearly extra work within the meaning of the contract, and was not a modification which would release the surety upon the bond. Brandrup v. Empire State Surety Co., supra; Geo. A. Hormel v. American Bonding Co., supra, page 288, 128 N. W. 12.

5. The contracts which were let for the completion of the Ames contract were not in language exactly similar to that found in the original, and for this reason counsel for defendant insist that the sum of the amounts paid pursuant to those subsequent contracts cannot be taken as the amount necessarily expended to complete the Ames contract. It is undoubtedly true that if, by any material departure from the original contract, the cost of the work was enhanced, defendant would not be liable for such enhanced cost. The authori-

ties cited by appellant go further, and to the extent the surety would be released absolutely. Chesapeake Transit Co. v. Mott, 169 Fed. 543, 95 C. C. A. 41; American Bonding Co. v. U. S., 167 Fed. 910, 93 C. C. A. 318. Without determining how far we agree to this, it is sufficient to say we find no material departure from the contract, nor any evidence in the record which would support a finding that because of any variance the cost of completing the work was enhanced, and therefore the surety was not discharged.

6. Estimates were issued by Ames amounting to $17,433.70, seventy-five per cent. of which would be $13,075.27. Nothing was paid on account of the last estimate, and the amount actually received by Ames was $11,086.95. Defendant attacks the good faith of the estimates, and further insists that they contain items for superintendence, office expenses, unloading tools, preparing equipment for operation, and similar items, aggregating $2,419.81. We are inclined to agree with counsel for defendant that the items specified should not have been included in the estimates of work actually done. The trial court seems to have held the same view. The elimination of this amount would reduce the estimates to $15,013.89. Seventy-five per cent. of this amount, however, is $11,260.57; so the total of the payments is less than seventy-five per cent. of the aggregate of the estimates so reduced.

Expert testimony was properly received as to the value of the work actually done. The values so testified to varied widely; the highest being that given by one of plaintiff's witnesses, who placed the value of the work done at $13,089.50. The unused material left by Ames amounted approximately to $1,700, which added to the construction in place as given by this witness, would give a total value of $14,889.50, seventy-five per cent. of which would still be more than the amount paid to Ames. In view of all the evidence, we do not feel justified in interfering with the finding that the estimates were issued in good faith, and the propriety of the payments to Ames must be assumed.

7. The testimony introduced with reference to the extra work performed by Ames was not as clear as could be desired. We understand, however, from the brief of counsel for plaintiff, that it is con-

ceded the extra work is represented by defendant's Exhibit 1; that being apparently a statement furnished by Ames, in which there is claimed for extra work $1,130.42. Assuming, as we do, that there is no dispute as to this amount, it is apparent that the municipality, when this work was completed, had received, not only the work required by the original contract, but in addition the value of the extra work, which should be added to the contract price of $47,235, making a total of $48,365.42, the payment of which amount resulted in no damage to plaintiff. The city was compelled to pay $55,468.95, an excess of $7,103.53, instead of $8,233.95, as found by the trial court. We hold that the trial court erred to this extent in estimating the amount which the plaintiff was entitled to recover. Brandrup v. Empire State Surety Co., supra.

A new trial of the action is therefore directed, unless the plaintiff, within twenty days after the filing of the remittitur from this court, consents in writing to reduce the amount so found, for which it is entitled to judgment, to the sum of $7,103.53, with interest from July 20, 1908, and that, if plaintiff so consents, the order denying a new trial be affirmed.