CEMELIA ALLEN and Another v. OLAF ENEROTH and Another.[1]

July 12, 1912.

Nos. 17,658—(216).

**Payments to contractor — bond — findings sustained by evidence.**

In an action upon a surety bond, given to secure the faithful performance of a builder's contract, it is *held* that the findings of the court to the effect that the owner did not make payments to the contractor in excess of the amount permitted by the contract are sustained by the evidence.

**Same — bond construed.**

The provisions of the contract limiting the payments to be made to eighty per cent should be construed to apply to payments which the owner of the building had the option to make or refuse, and not to payments made under compulsion as the result of suits to foreclose mechanics' liens.

**Forged receipts — breach of bond.**

The owner was under obligation by the terms of the contract, in protection of the rights of the surety, to require as a condition to the payment of money to the contractor the production by him of receipts from the laborers and materialmen corresponding to amounts paid them. Certain of the receipts presented by the contractor were spurious and forged, upon which he obtained money from the owner of the building. The owner was not aware of the forgery, and accepted the receipts in good faith. It is *held* that the conduct of the contractor in this respect was a failure faithfully to perform the contract, and a breach thereof, for which the surety was responsible.

**Cross-examination of nominal party.**

The erroneous permission of the right to call for cross-examination a nominal party to the action is not reversible error, unless prejudice resulted to the objecting party.

**Performance of conditions — findings sustained by evidence.**

Evidence *held* sufficient to justify the findings of the trial court to the effect that the obligee performed all the conditions of the contract imposed upon him, and that the record presents no reversible error.

**Expense in defending lien suits — liability of surety.**

The obligee in the builder's bond incurred certain expenses in defending

[1] Reported in 137 N. W. 16.

lien suits in the employment of attorneys to represent him therein. It is *held* that the expense so incurred, having been caused by the fault of the contractor, was a proper charge against the surety.

Action in the district court for Hennepin county by John G. Allen against Olaf Eneroth and Illinois Surety Company on their bond to secure the faithful performance of a building contract by defendant Eneroth and to indemnify Allen from any loss by reason of mechanics' liens. After plaintiff's death Cemelia Allen and A. E. Nelson, as administrators of the estate of plaintiff, were substituted as plaintiffs. Defendant Surety Company in its answer denied that any payments made by Allen to Eneroth were paid upon the certificates of the architects, as required by the contract; denied that Allen took any receipts from the parties who had furnished material or labor; and as a further defense set up that the contract provided that plaintiff should retain twenty per cent of the amount of the contract until after the owner had accepted the building; that if plaintiff had done this, he would have in hand $3,383.80; by reason of his failure to comply with that part of the contract, the liability of the answering defendant under the bond had been increased without its knowledge or consent and defendant had been discharged from any liability thereunder. The reply denied that John G. Allen ever paid Olaf Eneroth eighty per cent of the contract price on the building.

The case was tried before Dickinson, J., who made findings and as conclusion of law ordered judgment in favor of plaintiffs for $3,-705.75. From an order denying the motion of defendant Surety Company for a new trial, it appealed. Affirmed.

*James D. Shearer,* for appellant.

*Benton, Molyneaux & Morley,* for respondent.

BROWN, J.

On August 7, 1908, plaintiff Allen was the owner of certain real property in the city of Minneapolis, and on that day entered into a contract with defendant Eneroth for the construction of a dwelling house thereon. By the terms of the contract Eneroth agreed to furnish all labor and material used in the construction of the building,

and was to receive therefor, when the building was fully completed, the sum of $16,700. A subsequent modification of the contract slightly increased the cost price of the building. On September 4, 1908, to insure the faithful performance of the contract, Eneroth, as principal, and defendant Surety Company, as surety, duly executed and delivered to Allen that certain bond by which the Surety Company undertook to indemnify Allen for any default on the part of the contractor, Eneroth, to carry out and complete the contract as by its terms provided. The bond was so executed and delivered by the Surety Company at the instance of, and for a valuable consideration paid to it by, Eneroth. The contractor failed to fulfil the contract, in that he neglected to pay for labor and material used in the work of constructing the building with money which Allen had paid him for that purpose, and Allen was compelled to pay the same and did so. This action was brought to recover upon the bond. Plaintiff had judgment, and defendant Surety Company appealed from an order denying a new trial.

1. The building contract contained numerous provisions imposing upon the contractor and upon Allen, the owner of the building, certain specific obligations and duties to each other, and the contract, including such reciprocal obligations, was expressly made a part of the bond, thereby imposing, for the protection of the surety, a compliance therewith by Allen. Among other things the contract provided that payments as the work of construction proceeded should not exceed eighty per cent of the amount due for labor or material, and that the remainder, or twenty per cent, should be retained by Allen until full performance and acceptance of the building. It is contended by defendant Surety Company that Allen violated this part of the contract to its prejudice, in that he paid to the contractor an amount in excess of eighty per cent before completion of the work; and it is urged that this discharged the surety and rendered the bond void.

We do not stop to consider the question urged by defendant, namely, whether in a particular case, owing to its special facts, a violation of such a condition in a building contract would release the bonding company entirely (George A. Hormel & Co. v. American

Bonding Co. of Baltimore, 112 Minn. 288, 128 N. W. 12, 33 L.R.A. [N. S.] 513) ; for we are clear that there was no overpayment within the meaning of the contract. The provisions of the contract in this respect should be construed to apply to payments which the owner had the option to make or refuse, and not those which were compulsory and in discharge of valid lien claims against the property. In other words, the overpayment should result to the substantial prejudice of the surety.

It is well settled that the rule of strictissimi juris does not apply to contracts of the nature of that here involved to the same extent as to the voluntary surety. Brandrup v. Empire State Surety Co. 111 Minn. 376, 127 N. W. 424; George A. Hormel & Co. v. American Bonding Co. of Baltimore, supra; City of Fergus Falls v. Illinois Surety Co. 112 Minn. 462, 128 N. W. 820. Allen paid to the contractor, at intervals during the progress of the work, something over $9,000, and to valid lien claimants enough to make the total payment exceed the limit of eighty per cent by about $211. But certain of the payments to the lien claimants, in an amount exceeding this excess, were subsequent to the payments to the contractor. In view of this situation, we are clear that the contract was not in point of substance violated. City of Fergus Falls v. Illinois Surety Co., supra; Mayes v. Lane, 116 Ky. 566, 76 S. W. 399. Such payments simply reduced the liability of the Surety Company.

2. The building contract provided that, before payments were made to the contractor, Allen should require of him the production of receipts in full for labor performed or material furnished at the date of payment. It is contended by defendant that Allen violated the contract in this respect, and did not require the necessary receipts, in consequence of which money so paid the contractor was not applied upon the contract. Since the contract and its terms and various provisions were made a part of the surety contract, it is clear that defendant had the right to insist that Allen keep and perform the same, in so far as necessary to the protection of the surety. The purpose of this provision of the contract is obvious, and was to prevent, so far as possible, a wrongful diversion of the money paid in discharge of the obligations under the contract, and to enable the owner of the build-

ing to determine from the receipts presented that proper application thereof was made. And it is apparent that the failure to require a production of receipts would put it in the power of the contractor to defraud the owner by applying money paid him in discharge of debts having no reference to the building being constructed, and thus create a liability on the part of the surety which a production of the receipts would serve to prevent.

But the court found that proper receipts were in all instances required by Allen, and that no payments were made, except when they were presented. The court further found, however, in this connection, that certain of the receipts so presented, and upon which Allen acted in making payments to the contractor, were forged by the contractor, and were not signed by the parties by whom they purported to be executed. Allen had no knowledge of the spurious character of the receipts, and relied thereon in good faith as evidencing the amounts that had been paid to laborers and materialmen.

3. Our examination of the record discloses evidence sufficient to justify the findings of the court to the effect that in all instances receipts were required by Allen, and we come directly to the question whether the acceptance of the forged receipts was, under the facts stated, a violation of his contract as to the surety; in other words, whether the owner of the building is bound at his peril, in a case of this kind, as to the surety, to determine the genuineness and validity of receipts presented to him, which on their face purport to have been executed by persons entitled to receive payments for labor or material used and employed in the building, or whether the wrongful conduct of the contractor in presenting forged receipts is an act for which the surety is responsible. We have given this question careful consideration, and reach the conclusion that the particular misconduct of the contractor was covered by defendant's contract of suretyship, and that it alone is responsible therefor.

It affirmatively appears that Allen acted in good faith in accepting the receipts, and there is no finding of the court from which it might be said that he was negligent in so doing. Defendant's bond provided that the contractor should "well, truly, and faithfully comply with all the terms, covenants, and conditions of said contract, which is

hereby made a part of this bond." The contractor was obligated by the building contract faithfully to perform the same, and to produce receipts covering money due to laborers and materialmen, as a condition precedent to payments to be made him. It was an essential element of the contract that Allen demand and require the production of receipts, and as a necessary corollary that the contractor produce genuine receipts from those entitled to payments. Under the bond the surety was sponsor for the faithful conduct of the contractor, and we discover no reason for excepting from its obligations in this respect his misconduct in producing to Allen the false and spurious receipts. The purpose of the bond was to relieve Allen from keeping a watch over the contractor, and he was under no obligation affirmatively to guard against his defaults and misdeeds. The surety assumed that obligation, and guaranteed by the bond that he would faithfully perform the contract. In this situation it seems clear that the conduct of the contractor in producing the false receipts was a violation of his contract obligations for which defendant must respond. Consaul v. Sheldon, 35 Neb. 247, 52 N. W. 1104; Van Buren County v. Surety Company, 137 Iowa, 490, 115 N. W. 24, 126 Am. St. 290.

4. The production of the receipts to Allen was shown by defendant Eneroth, who was called by plaintiff as a witness for cross-examination. It is probable that plaintiff was not entitled, as a matter of right, to cross-examine the witness under the statute. Though he was a party to the action, he did not appear or answer therein, and the case comes within the rule laid down in Suter v. Page, 64 Minn. 444, 67 N. W. 67. Yet we find no sufficient reason for holding this reversible error. Defendant surety company was in no way prejudiced. Leystrom v. City of Ada, 110 Minn. 340, 125 N. W. 507. Nor was there reversible error in receiving this evidence in rebuttal.

5. It is further contended that the surety was released from the failure of Allen to notify it of the misconduct of the contractor, and by continuing to pay money to him after receiving full knowledge that he had violated the contract and was not paying claims properly chargeable to the building with money which Allen had paid him. The bond required Allen to notify defendant of any default of the

118 M.—31.

contractor, a failure to comply with which would forfeit all rights under the bond. Default in this respect was not found by the trial court, and in our view of the evidence the court was not required to so find. Of course, the burden was upon defendant to show that the required notice was not given, and we find no evidence conclusively showing a failure on the part of Allen to give the same. Taylor v. Security Mut. Fire Ins. Co. 88 Minn. 231, 92 N. W. 952; Fletcher v. German Amer. Ins. Co. of New York, 79 Minn. 337, 82 N. W. 647. Nor will the findings of the court or the evidence in the case justify us in holding that Allen was aware of the misconduct and defaults of the contractor, and with that knowledge continued to pay money to him under the contract. On the other hand, it appears fairly clear from the record that the officers of the defendant surety company obtained knowledge of such conditions as soon, at least, as plaintiff did, and that any further notice thereof would have served no purpose in the protection of defendant.

6. The trial court included in the judgment against defendant the sum of $250, as attorney's fees in the action brought by materialmen to foreclose liens upon the property, occasioned by the default of the contractor. There was no error in this action of the court. The bond covered all damages and losses sustained by Allen in consequence of the contractor's default. His default occasioned the lien suits, in defending which Allen incurred this expense for the services of his attorney. We think the expense so incurred was properly a charge under the bond.

7. This covers all questions requiring special mention. We have fully considered all the assignments, and discover no error of a character to justify a new trial. The findings are sustained by the evidence, and there were no errors in the admission or exclusion of testimony.

Order affirmed.