**PEERLESS INSURANCE COMPANY,**
Plaintiff,

v.

**CERNY & ASSOCIATES, INC.,**
Defendant.

Civ. No. 4-60-137.

United States District Court
D. Minnesota,
Fourth Division.

Nov. 30, 1961.

As Amended Dec. 5, 1961.

Robert L. Schnell, Minneapolis, Minn., Chester G. Rosengren, Fergus Falls, Minn., for plaintiff.

William P. Westphal and John G. Kressel, Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff commenced this action to recover damages in the sum of $100,644.20 for alleged negligence of defendant. Issue was joined by defendant's general denial and a plea of contributory negligence.

The action stems from events having to do with the award of a contract for the construction of a new County Court House at Montevideo, Minnesota. Bids were called for by the Board of County Commissioners of Chippewa County, in said state, hereinafter referred to as the Owner. The successful bidder was Dean Contracting Co., Inc., hereinafter referred to as the Contractor. On July 13, 1955, the Owner and the Contractor entered into a contract for the construction of said Court House and, in compliance with Minnesota law, plaintiff and the Contractor, for the purpose of insuring performance of said contract, executed and delivered to the Owner a bond in the sum of $567,667.00.

Attached to, and a part of said contract, is the following:

"Payment to Contractors

"Not later than the 15th day of each calendar month the Owner will make a partial payment to the Contractor on the basis of a duly certified and approved estimate of the work performed during the preceding calendar month under this contract, but to insure the proper performance of this contract, the Owner will retain 10% of the amount of each estimate until final completion and acceptance of work covered by this contract.

* * * * * *

" * * * In applying for payments, the contractor shall submit a statement based upon this schedule, and, if required, itemized in such form and supported by such evidence as the architect may direct, showing his right to the payment claimed."

As construction progressed, the Contractor submitted to the Owner for payment monthly estimates totaling $314,069.60 which were certified by the defendant and as a result thereof, the sum of $280,162.63 was paid to the Contractor by the Owner.

On March 9, 1956, the Owner notified the plaintiff that the Contractor was in default in the performance of said contract and requested plaintiff to complete construction as required by said bond. Plaintiff complied with said request, and introduced in evidence the following: Defendant's contract with the Owner.[1] Defendant's agreement to supervise construction as incorporated in the specifications.[2] The bond and a detailed breakdown of construction costs.[3] Defendant's certificates illustrating the method pursued by defendant in advising the Owner of work performed and materials supplied

1. Exhibit 1.
2. Exhibit 6.
3. Exhibit 7.

by the Contractor during the course of construction and up to said default are in evidence.[4]

Except as to facts bearing on liability, the instant case is devoid of factual dispute relative to defendant's supervision of construction and certifying and approving six monthly estimates.[5] It appears from the evidence that the defendant's inspector of construction was relied upon to process the estimates at the job-site by visual examination from August 1955 on, and then to forward the estimates to defendant's vice president who in turn delivered them to the Owner certified for payment. The inspector admits he did not question the Contractor as to the accuracy of costs.

Defendant's expert testified to the effect that the procedure relative to inspection and periodic estimates by defendant was proper, and that a 5% error with respect to the individual items in the various estimates was within professional tolerance, but approval of estimates totalling $314,000.00, when only $202,000.00 had been earned by the Contractor was not within said tolerance according to methods practiced by architects in the community.

That plaintiff expended the amount sued for in compliance with the bond is not seriously in dispute. The issues in dispute reduced to simplicity are these:

Was defendant's alleged negligence the sole proximate cause of plaintiff's damage to the exclusion of contributory negligence on the part of plaintiffs? In other words, absent negligence of the plaintiff as a contributing proximate cause of the damage sued for, has plaintiff carried the required burden of proof supporting its contention that defendant failed to exercise reasonable care as defined by Minnesota law?

Diversity of citizenship and the amount sued for vest jurisdiction in this Court, and the law of the forum controls the issues of negligence, contributory negligence and proximate cause. Search has revealed one case in point bearing on liability and based on negligence of an architect.[6] It is the law of Minnesota that ordinarily the standards of reasonable care, which apply to the conduct of architects, are the same as those applying to lawyers, doctors, engineers, and like professional men engaged in furnishing skilled services for compensation, and they are entitled to adequate protection and a wide discretion in determining what practices and principles are best suited for the work undertaken by them. In the instant case they would be required to perform said services, for which they were engaged, in good faith with reasonable care and competence, and would be liable

4. Exhibits 18 to 23, inclusive.

5. Exhibit 18 to 23, inclusive.

6. Plaintiff relies on a Mississippi case—State for Use of National Surety Corp. v. Malvaney, 221 Miss. 190, 72 So.2d 424, 43 A.L.R.2d 1212—cited in Levinson v. Linderman, 51 Wash.2d 855, 322 P.2d 863, 867, and Horne v. State Building Commission, 233 Miss. 810, 103 So.2d 373, 384; And also cites: Barrett Bros. Co. v. County of St. Louis, 165 Minn. 158, 206 N.W. 49; Cowles v. City of Minneapolis, 128 Minn. 452, 151 N.W. 184; Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N.W.2d 364, 54 A.L.R.2d 316; Thelen v. Spilman, 251 Minn. 89, 86 N.W.2d 700, 77 A.L.R.2d 1315; Northern National Bank of Bemidji v. Northern Minn. Nat. Bank, 244 Minn. 202, 70 N.W.2d 118;

Palmer v. Brown, 127 Cal.App.2d 44, 273 P.2d 306.

Defendant cites: Central Metropolitan Bank of St. Paul v. Fidelity & Casualty Co., 159 Minn. 28, 198 N.W. 137; Gammel v. Ernst & Ernst, supra; Johnson v. Colp, 211 Minn. 245, 300 N.W. 791; Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N.W. 265; Allen v. Eneroth, 118 Minn. 476, 137 N.W. 16; City of Fergus Falls v. Illinois Surety Co., 112 Minn. 462, 128 N.W. 820; New York Cas. Co. v. Sazenski, 240 Minn. 202, 208, 60 N.W.2d 368; Chicago, R. I. & P. Ry. Co. v. Theobald Flour Mills Co., 154 Minn. 463, 191 N.W. 920, 193 N.W. 306; 13 Dunnell's Minnesota Digest, 3rd Ed. Sec. 7000, p. 548; 18 Dunnell's Minnesota Digest, 3rd Ed. Sec. 9107b.

for damages occasioned by any failure to do so.[7]

That fraud may have been resorted to by the Contractor is not relied on by pleading or proof except as it may reflect negligence of defendant as a proximate cause of plaintiff's loss. Plaintiff's evidence suggests a duty on the part of defendant, as an architect responsible for plans, specifications, inspection during construction, and supervision of materials received pursuant to the contract, to exercise reasonable care in approving for payment, the estimates submitted and upon which the Owner had a right to rely.

 Minnesota law defines negligence to be a failure to exercise reasonable care, which is such care as a person of ordinary prudence would have exercised under the same or similar circumstances, as that involved in a like case on trial before the Court. For negligence to be pertinent to liability, it must be the proximate cause of the damage sustained. Proximate cause means the direct cause.[8]

 Absent a controlling decision by the Supreme Court of Minnesota, the trial Court must determine what, it believes, the Minnesota Court would hold if called upon to decide the question on trial.[9] The situation in the present case requires search for a controlling decision of an appellate court comparable in jurisdiction to the Supreme Court of Minnesota.[10] Review of such cases reveals that Malvaney, supra, is the nearest approach to a well-considered expression of the law applicable to the facts of the instant case.

 Of primary importance is the agreement entered into by the Contractor with the Owner. Secondary to this is the bond furnished by the plaintiff and the latter's responsibility to make good any loss sustained by the Owner on account of the default of the Contractor. In this respect plaintiff would be entitled to be subrogated to the rights of the Owner and against defendant for loss sustained or met with by reason of defendant's negligence that proximately caused damage resulting therefrom.[11]

The contention of the plaintiff-surety in this tort action, is that the Owner and the plaintiff were each free from negligence and that defendant, as the architect, was negligent in issuing monthly, as required, "a duly certified and approved estimate of the work performed during the preceeding calendar month * * * [so as to permit] the Owner * * * [to] retain 10% of each estimate until final completion and acceptance of work covered by [the] contract," and which negligence on the part of defendant was the proximate cause of plaintiff's damage herein sued for.

 Where, as in the case at bar, the alleged liability of defendant is predicated upon the claimed negligent and wrongful release of the retainage fund provided by the contract for the mutual benefit and protection of the Owner and the surety by subrogation, the Court is of the opinion that the evidence supports the conclusion that defendant had actual or constructive notice and knowledge of the surety bond and the purpose of the retainage fund. Such knowledge added to by the duty of defendant to exercise reasonable care in certifying bills for payment, as it did, charged defendant

7. Gammel v. Ernst & Ernst, supra; Northern National Bank v. Northern Minn. Nat. Bank, supra.

8. Von Eye v. Hammes, D.C.Minn., 147 F. Supp. 174, affirmed Mounds Park Hospital v. Von Eye, D.C., 245 F.2d 756.

9. Wood v. Gas Service Company, 8 Cir, 245 F.2d 653, 657; Homolla v. Gluck, 8 Cir., 248 F.2d 731.

10. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Kelm, D.C.Minn., 104 F.Supp. 745, 747, 748.

11. Zontelli Brothers v. Northern Pacific Railway Co., 8 Cir., 263 F.2d 194; American Surety Co. v. Bank of California, 9 Cir., 133 F.2d 160; Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N.W. 265, 4 A.L.R. 510; Hayward v. State Farm Mut. Automobile Ins. Co., 212 Minn. 500, 4 N.W.2d 316, 140 A.L.R. 1236.

with notice that the retainage fund was not to be released until the contract had been carried out and concluded, as provided therein, requiring the Contractor to submit satisfactory proof that all bills and indebtedness had been paid. Privity of contract between plaintiff and defendant was not a prerequisite to the existence of the defendant-architect's duty in the foregoing respect, for the reason that said architect's duty to protect the Owner and the subrogated surety arose out of the general and mutual contractual arrangements which included resulting independent rights and obligations. Nor is privity of contract a requisite to make effective said duty, the violation of which constitutes actionable negligence.

To state it otherwise, defendant-architect undertook the performance of professional conduct, which, if negligently performed, would obviously cause loss to the Owner and/or plaintiff-surety. Under such circumstances, the law imposed upon defendant a duty to exercise due care to avoid such loss, and plaintiff-surety was not required to anticipate that retainage funds would be wrongfully released. The record of the instant case lacks probative evidence of contributory negligence by plaintiff.[12]

The Court concludes from the foregoing that defendant herein was engaged to furnish skilled professional services for compensation, and in the doing of which, it was charged with the duty of exercising reasonable care in discharging the obligations of an architect as required by said contract. Defendant, in considering and approving estimates for payment by the Owner, was not in any sense an arbiter. The problem for the trier of the facts, therefore, is not whether the Court or another architect might think that some aspect of defendant's conduct should have been different, but rather that what defendant did in the way of approving estimates, in the present case, did not measure up to the exercise of due care in the light of approved professional standards. As the Court views the evidence in the present case, the negligent approval and certifying for payment of sums beyond and in excess of the amount required to be retained was the proximate cause of plaintiff's damage. The imposition of such standards requires defendant to exercise reasonable care and competence in the performance of its services.

Concluding, it is my opinion that plaintiff has established by a clear preponderance of the evidence that defendant was negligent; that said negligence was the sole proximate cause of the loss sustained by the plaintiff.

Plaintiff may submit findings of fact, conclusions of law, order for and form of judgment consistent with the foregoing.

It is so ordered.

Defendant may have an exception.

---

12. Gammel v. Ernst & Ernst, supra; State for Use of National Surety Corp. v. Malvaney, supra.